IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AMERICAN FAMILY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION FILE NO. 1:16-cv-04023-RWS |
| ABDULMOHSEN ALMASSUD and LUISA CRUZ MEZQUITAL, | ) ) ) | |
| Defendants. | ) | |

## DEFENDANT ALMASSUD'S RESPONSE TO AMERICAN FAMILY INSURANCE COMPANY'S MOTION TO DISMISS

"The parties agree this case is not complex."  (Doc 42, p.9)  The reason it is not complex is that the complaint, counterclaims and defenses all ask the same question:  "What is the proximate cause of the $30 million judgment?"  Plaintiff American Family Insurance Company ("AmFam") uses incorrect "facts" to argue that Defendant Abdulmohsen Almassud's alleged failure to cooperate caused the judgment.  Mr. Almassud uses largely undisputed facts to show that AmFam's failure to settle Luisa Cruz Mezquital's claim caused the judgment.  Each party asserts an affirmative claim; each claim functions as a defense to the other's claim. Thus, all of the claims are ripe; all should be litigated together in this one action; and AmFam's motion to dismiss should be denied.

## I.     STATEMENT OF FACTS

### A.     AmFam Quickly Learned the Jeep was Used "Off-Road" and Investigated How it Could Protect Itself in Subrogation.

On October 21, 2012, Mr. Almassud was driving his 1995 Jeep Wrangler when the steering failed.  The Jeep collided with Mezquital's vehicle, causing her grisly and permanent injury.  (Doc 26, ¶3)  Mr. Almassud is insured by AmFam with bodily injury liability limits of $100,000.  (Doc 26, ¶4)  The policy covers Mr. Almassud's legal liability arising out of the accident.  (Doc 26, ¶6)  The policy provided AmFam a unilateral right to settle Mezquital's claims and imposed on AmFam a duty to settle if there was a reasonable opportunity.  (Doc 26, ¶¶7-8)

On October 22, 2012, the AmFam adjuster took a statement from Mr. Almassud, and he provided truthful answers.  (Doc 26, ¶10)  The adjuster communicated with Mr. Almassud several times, and Mr. Almassud promptly responded to all requests by truthfully answering all questions.  (Doc 26, ¶¶11-12)

During its investigation, AmFam learned that the Jeep's steering mechanism was replaced shortly before the accident by OH's Auto Center.  (Doc 26, ¶18)  As requested, Mr. Almassud provided AmFam documentation indicating that the new steering kit was heavy-duty and made for off-road use.  (Doc 26, ¶19)  The mechanism was to "tackle all of your off-road adventures."  (Doc 26, ¶26)

Prior to any demand, AmFam knew it would have to pay Mr. Almassud for

property damage to his Jeep.  (Doc 26, ¶¶20-22)  AmFam determined it might

recover in subrogation against OH's if it could prove OH's negligently installed

the kit.  (Doc 26, ¶20)  To do so, AmFam retained engineer Mark Hook.  Thus,

AmFam's allegation in paragraph 15 of its complaint that "After receiving the

demand, AmFam retained an engineer to inspect Almassud's Jeep" is not true.

(Doc 26, ¶21)  The engineer told AmFam that Mr. Almassud lost steering because

a cotter pin fell out or was improperly installed.  (Doc 26, ¶36)  He also informed

AmFam that off-roading did not cause the steering failure.  (Doc 26, ¶¶37-38)

### B. AmFam Described the Jeep as an "Off-Road Vehicle."

The crux of AmFam's complaint for declaratory judgment rests on its

alleged ignorance that the Jeep was used off road. But before there was any

lawsuit, AmFam and Mr. Almassud debated the value of his Jeep.  (Doc 26, ¶23)

Mr. Almassud thought the Jeep was worth more, but AmFam refused to pay for

what its adjuster characterized as a "specialized off-road vehicle."  (Doc 26, ¶¶15,

24-25)  Prior to Mezquital's lawsuit, no one from AmFam saw fit to ask further if

Mr. Almassud used the Jeep off road.  (Doc 26, ¶¶13-14 and ¶16)  AmFam did not

need to ask that question because AmFam knew the Jeep was used off road.  (Doc

26, ¶27)  Despite its documented knowledge, AmFam contends it did not know the

Jeep was used off road until after the Underlying Lawsuit was filed.  (Doc 26, ¶28)

### C.   AmFam Received and Rejected Three Reasonable Opportunities to Settle a Very Dangerous Claim.

On December 3, 2012, Mezquital's attorney, Evan Kaine, sent AmFam an offer to settle.  (Doc. 7-2 and Doc 26, ¶40)  The first offer documented special damages of $338,707, more than three times policy limits, and was a reasonable opportunity to settle.  (Doc 26, ¶41 and ¶47)  AmFam knew that if it risked a trial rather than settling, Mr. Almassud faced a reasonable likelihood of being subjected to a judgment in excess of his policy limits.  (Doc 26, ¶43)  Nonetheless, AmFam decided to roll the dice at trial. (Doc. 7-6 and Doc 26, ¶48)

On December 20, 2012, Kaine provided another opportunity to settle within policy limits, explaining – logically – that even if OH's shared fault, a trial would jeopardize Mr. Almassud's personal assets.  (Doc. 7-7 and Doc 26, ¶49 and ¶51) AmFam rejected the second offer.  (Doc. 7-8 and Doc 26, ¶52)

On April 4, 2014, Kaine sent a third reasonable offer to settle within policy limits, providing another 45 days for a response and explaining why AmFam's liability defense was a reckless gamble.  (Doc. 7-9)  Presaging exactly what happened at trial, Kaine explained that Mr. Almassud had a duty to inspect the steering.  (Doc 26, ¶53 and ¶55)  Manufacturer documentation of the Rigged Ridge steering system available to AmFam and its engineer clearly states that "It is the owner's responsibility to check that all bolts and or keeper nuts are tight and within

listed torque specs after first 10-20 miles of driving and should be rechecked after 200 miles or after all off-road trips." (Doc 26, ¶29)  Neither AmFam nor its engineer asked Mr. Almassud if he had complied with any inspection duties or requirements.  (Doc 26, ¶¶30-31)  A reasonably prudent insurer denying liability for the reasons AmFam denied liability would have learned of the driver's inspection duties, questioned the driver, and reversed its denial.  (Doc 26, ¶¶32-35) AmFam failed to do so and rejected the third offer.  (Doc. 7-10 and Doc 26, ¶56)

### D.    AmFam Forces the Underlying Lawsuit.

Mezquital had no alternative but to file suit against Mr. Almassud. (Doc. 7-12 and Doc 26, ¶¶57-58)  Mr. Almassud cooperated with AmFam's chosen lawyers.  (Doc 26, ¶59-60)  AmFam's in-house counsel who coordinated the defense admitted to outside defense counsel that AmFam should have settled. (Doc 26, ¶61)  During trial, AmFam's "bad-faith" counsel referred Mr. Almassud to criminal counsel chosen by AmFam.  (Doc 26, ¶70)  The jury found against Mr. Almassud and awarded more than $30 million.  (Doc 26, ¶64)  A prevailing theory was Mr. Almassud's alleged breach of his duty to inspect the steering.  (Doc 26, ¶65)  Thus, the verdict gave full support to the theory Kain warned of when he tried to convince AmFam to settle for $100,000.  (Doc. 7-9 and Doc 26, ¶66)  Mr. Almassud is personally liable for the resulting judgment.  (Doc 26, ¶69)

### E.   AmFam Conducts Post-Trial Motions to Protect Its Interests and to Harm Mr. Almassud's Interests.

AmFam retained new counsel for Mr. Almassud.  (Doc 26, ¶71)  While moving for a new trial, new counsel made factually incorrect representations beneficial to AmFam's interests and detrimental to Mr. Almassud's interests.  (Doc 26, ¶72)  The representations were without Mr. Almassud's consent or knowledge.  (Doc 26, ¶73)  There is, therefore, a conflict of interest between AmFam and Mr. Almassud, but AmFam continues to control the defense.  (Doc 26, ¶74)  Mr. Almassud requested independent counsel, but AmFam refuses.  Meanwhile, AmFam controls the defense and is making representations to the trial court that harm Mr. Almassud's defense to AmFam's non-cooperation claims.  (Doc 26, ¶75)

Mezquital's attorneys will attempt to collect portions of the judgment notwithstanding any appeal.  (Doc 26, ¶79)  AmFam will not post a full bond for the judgment, allowing Mezquital's attorneys to collect during the appeal.  (Doc 26, ¶80)  When the judgment is picked up by a credit reporting agency, Mr. Almassud's excellent FICO credit score will go down.  (Doc 26, ¶¶81-82)  Mr. Almassud has been damaged by the existence of the judgment and the imminent collection efforts.  (Doc 26, ¶83)  Mr. Almassud has incurred attorneys' fees because of AmFam's actions and experienced inconvenience, expense, mental distress, and other damages.  (Doc 26, ¶84)  Had AmFam settled, Mr. Almassud

would have not been sued, would have never been compelled to give a deposition, would have never testified at trial, and would not be faced with crushing financial debt.  The judgment exists; creating a reasonable inference that it is now impossible for Mr. Almassud to obtain a loan for a house or car.

## II.    ARGUMENT AND CITATION TO AUTHORITY

### A.    Standard on a Motion to Dismiss

When considering AmFam's motion, this court **must** "accept as true all facts set forth in the plaintiff's complaint [and] **must** draw all reasonable inferences in the light most favorable to the plaintiff." *Innocent v. Wachovia*, 2012 WL 602129, *2 (N.D. Ga.) (emphasis added).  The Eleventh Circuit has cautioned against overuse of the "plausibility standard," explaining that the rule "is one of *plausible grounds to infer* [and] simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Sec. of Labor v. Labbe*, 319 Fed. App'x. 761, 763 (11th Cir. 2008) (emphasis added).

### B.    AmFam's Failure to Settle is Ripe.

#### 1.    A successful appeal can only mitigate damages.

"An insurance company may be liable for damages to its insured for failing to settle the claim of an injured person where the insurer is guilty of negligence, fraud, or bad faith in failing to compromise the claim." *S. Gen. Ins. Co. v. Holt*, 262 Ga. 267, 268, 416 S.E.2d 274, 276 (1992).  "[T]he insured's suit is not upon

the contract but rather in tort."  *U.S. Fid. & Guar. Co. v. Evans*, 116 Ga. App. 93, 94 (1967), *aff'd.*, 223 Ga. 789 (1967).  Thus, the reference in *Holt* to "damages to [the] insured for failing to settle" is damages recoverable in tort.

Insureds like Mr. Almassud are entitled to the full measure of tort damages. *State Farm Mut. Auto. Ins. Co. v. Smoot*, 381 F.2d 331, 338-39 (5th Cir. 1967).[1]  A footnote in *Smoot* lists different types of damages affirmed on appeal.  *Id*. at n.1. Because Mr. Almassud is entitled to recover any damages available in tort, his claims are ripe if he has suffered tort damages that AmFam cannot reverse by reversing the judgment against him.  As explained below, that has occurred.

In tort cases, Georgia law allows for "special damages" and "general damages."  O.C.G.A. § 51-12-2(a)-(b).   "General damages are those which the law presumes to flow from any tortious act; they may be recovered without proof of any amount."  O.C.G.A. § 51-12-2(a).  In *Smoot*, the insured was awarded $10,000 in general damages.  *Id*. at n.1.  In affirming general damages, the appellate court noted that the evidence showed that the existence of the judgment and collection efforts caused the damages.  *Id.* at 338-39.

---

[1] *Smoot* is binding.  *Bonner v. Prichard*, 661 F.2d 1206, 1210 (11th Cir. 1981).

> a. *Mr. Almassud's creditworthiness is already damaged and he will be further damaged during the pendency of the appeal through collection efforts.*

AmFam's motion rests on the fallacy that if the judgment is reversed, there will be no damages.  Mr. Almassud has already been damaged by the existence of the judgment and imminent collection efforts.  (Doc 26, ¶83)  The judgment is now a public record that will lower his excellent FICO credit score even if reversed. (Doc 26, ¶¶81-82)[2]  AmFam will not post a bond, allowing Mezquital to collect during the appeal.  (Doc 26, ¶80)  (Exhibit A, 1/27/17 letter from AmFam refusing to post bond)[3]  AmFam will not dispute that Mezquital's attorneys have announced they will attempt to collect on the Judgment during the appeal.  (*See* Doc 26, ¶79) No matter how the appeal turns out, these damages have occurred, making Mr. Almassud's tort claim ripe.

Further, the best AmFam can hope for from the appeal is a new trial.  Given the amount of the verdict, and 100 percent liability found against Mr. Almassud by 12 unanimous jurors, a future defense verdict is hard to imagine. AmFam cannot

---

[2] As this Court is aware, once a judgment gets on a credit report, credit scores go down even if the judgment is satisfied or otherwise non-collectible.

[3] "[A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents."  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).  The letter from AmFam validates Mr. Almassud's allegations, is "central to the plaintiff's claim" and should be considered by this Court.  *Id*.

credibly allege that a new trial might possibly result in anything other than a judgment in excess of policy limits for a different amount.  The appeal is not about absolving Mr. Almassud of liability, it is about mitigating damages to him if a different jury renders a verdict less than $30 million. Unfortunately, there is no guarantee that a successful appeal will result in a lower verdict.  Given the treating surgeon's testimony that Ms. Mezquital's injury was the worst he had ever seen and gave him nightmares, a small verdict in the future is a speculative wish.

> b.    *Mr. Almassud has incurred attorneys' fees that a successful appeal cannot cure.*

Mr. Almassud has incurred attorneys' fees because of AmFam's tortious actions.  (Doc 26, ¶84)  Unlike all other cases cited by AmFam, this is not a case where the insured may sit patiently while the insurance company appeals on her behalf.  In this case, AmFam sued Mr. Almassud asserting what is in effect an affirmative defense to Mr. Almassud's claim that AmFam negligently or in bad faith failed to settle.  His fees are recoverable as damages (*infra.*, §II.G), so he has experienced recoverable damages that ripen his claim.

> c.    *Georgia law allows damages for mental distress.*

Mr. Almassud has experienced inconvenience and mental distress.  (Doc 26, ¶84)  "[W]hen the claim is for intentional misconduct, damages for mental distress may be recovered **without proof of physical injury**."  *Hamilton v. Powell,*

10

*Goldstein, Frazer & Murphy*, 252 Ga. 149 (1984) (emphasis added).  The Supreme Court has approved such damages in a tort action for failure to settle.  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003).  In *Campbell*, $1 million in emotional distress damages were awarded even though the insurer paid the excess verdict and the insured "suffered only minor economic injuries."  *Id*. AmFam does not explain how a speculative new trial, if it does occur, will erase damages Mr. Almassud has experienced.  The motion should be denied.

*d.    Claims for nominal damages are perfected.*

"If an injury is small or the mitigating circumstances are strong, nominal damages only are given."  O.C.G.A. § 51-12-4.  Nominal damages are available in tort.  *Callahan v. Panfel*, 195 Ga. App. 891, 892-93 (1990).  Mr. Almassud alleges facts supporting – at the very least – nominal damages.  The complaint prays for nominal damages.  (Doc 26, p.53)  Even if the judgment is reversed, Mr. Almassud may recover nominal damages.   His claims are ripe and may not be dismissed.

2.    <u>No Georgia case has condoned the drastic remedy of dismissal in a case like the instant one.</u>

An insured may maintain a negligent or bad-faith failure to settle action once there is a jury verdict or judgment in excess of policy limits.  *See*, *Trinity Outdoor, LLC v. Cent. Mut. Ins. Co.*, 285 Ga. 583, 679 S.E.2d 10 (2009).  In *Trinity*, the insured faced a wrongful death claim that its insurer refused to settle.  The insured

11

settled the claim and filed suit against the insurer.  The Georgia Supreme Court ruled that the insured "cannot maintain an action against [the insurer] for bad faith failure to settle the [] claim in the absence of a jury verdict."  *Id*. at 587, 13 (emphasis added).  *Trinity* recognizes that a verdict in excess of policy limits can cause damages.  Verdicts lead to stress, negative public records, disparagement of credit scores and, most significantly, judgments.  In *Trinity*, there was no verdict or judgment.  This case is different, as Mr. Almassud has been damaged by both.  No Georgia court has ruled that an insured damaged by an excess judgment has no cause of action during an appeal.  This Court should give Mr. Almassud the benefit of the doubt and deny AmFam's motion for the drastic remedy of dismissal.

### 3.   Other jurisdictions do not uniformly hold that a final judgment is necessary in all situations.

Other jurisdictions have ruled that a cause of action for failure to settle accrues upon entry of a judgment that damages the insured, even if the judgment is appealed.  *Carpenter v. Auto. Club*, 58 F.3d 1296 (8th Cir. 1995).  In *Carpenter*, the trial court entered judgment on September 3, 1991.  *Id*. at 1299 and 1301.  The insurer "appealed the judgment to the Arkansas Supreme Court; however, it [did not] post[] a supersedeas bond to protect Carpenter from execution by judgment creditors while the appeal was pending."  *Id*. at 1299.  The Arkansas Supreme Court affirmed the underlying judgment on October 5, 1992.  *Warhurst v. White*,

310 Ark. 546, 838 S.W.2d 350 (1992).  Nonetheless, in examining the running of the statute of limitations in the resulting bad faith action, the Eighth Circuit expressly ruled that the cause of action accrued on September 3, 1991, **more than one year before appeals were exhausted**.  *Id*. at 1299.

AmFam, like the insurer in *Warhurst*, will not post a bond to protect Mr Almassud during the appeal.  Mr. Almassud, like the insured in *Warhurst*, is threatened by the lack of a bond.  Although no Georgia court has expressly ruled on when Mr. Almassud's statute of limitations begins to run, if a Georgia court were to agree with *Warhurst*, it is already running.  Mr. Almassud must bring his claim now or risk allowing the statute to run.

A case AmFam cites is inapplicable on its facts and on the law.  *Romano v. Am. Cas. Co. of Reading, Pa.*, 834 F.2d 968 (11th Cir. 1987).  Like this case, *Romano* dealt with a "bad faith" lawsuit while the underlying judgment was on appeal.  Unlike this case, the *Romano* court knew the insured "might later be found not liable in the underlying tort action."  *Id.* at 970.  The *Romano* court further reasoned that "if an insured is **no longer exposed to any loss** in excess of the limits of his liability insurance policy, he no longer has any claim he might previously have had against his insurance company for bad faith failure to settle within the policy limits."  *Id.* at 970-71 (emphasis added).  That made sense in

*Romano*, as the underlying liability against the insured was for negligent entrustment of his vehicle to the driver who caused the accident.  *Id.* at 969.  The insured was not the driver.  There was a lot of blame to go around among the multiple defendants, so the court was comfortable with the possibility that the insured might escape liability completely in a new trial.

This case is different on the facts.  AmFam does not allege that a new trial will result in a verdict less than policy limits.  The best AmFam can hope for is a new trial that results in a lower verdict, but one that will still exceed policy limits and expose Mr. Almassud to financial ruin.  Thus, the rule in *Romano* cannot apply on these facts because an appeal cannot create a result where Mr. Almassud "is no longer exposed to any loss in excess of the [policy] limits."  *Id.* at 970-71

This case is also different from *Romano* on the law.  In Florida, a claim like the one Mr. Almassud has against AmFam sounds in contract.  *Swamy v. Caduceus Self Ins. Fund, Inc.*, 648 So. 2d 758, 760 (Fla. Dist. Ct. App. 1994).  In Georgia, his claim sounds in tort.  *U.S. Fid. & Guar. Co. v. Evans*, *supra*.  As explained above, Mr. Almassud can recover a broader array of damages than could a Florida insured with the analogous cause of action.  *Romano* is a Florida contract case that provides no support to dismiss this Georgia tort case.

Similarly inapplicable is *Fortson v. St. Paul Fire & Marine Ins. Co.*, 751

14

F.2d 1157 (11th Cir. 1985). *Fortson* was brought by the claimant in a direct action against the insurance company after the underlying lawsuit produced an excess judgment.[4]   Under those facts, if the appeal of the underlying lawsuit reversed the judgment, all of the claimant's damages would have been erased. *Fortson* did not involve an insured alleging that it had already been damaged by the judgment.

Another Florida case AmFam cites supports Mr. Almassud, as it ruled that the insured suffered damages "the moment" the trial court entered judgment even though an appeal was pending. *Morgan v. GEICO*, 2012 WL 4377790, at *5 (M.D. Fla.), *adopted*, 2012 WL 4377780. *Morgan* is consistent with Mr. Almassud's argument, as it held that the insured's injury occurred "at the time the Florida court entered judgment against [the insured] in excess of her policy limits." *Id*. at *6. **"This is the moment she incurred damages."** *Id.* (emphasis added). After deciding to apply Florida law, the court stayed but did not dismiss the case. Dismissal is a drastic remedy, and this Court should deny AmFam's motion.

> 4.   AmFam's failure to settle is ripe because it is a defense to AmFam's claim.

AmFam alleges it was prejudiced by Mr. Almassud's alleged actions and that the form of prejudice is the $30 million judgment.  AmFam had three

---

[4] Florida law, unlike Georgia law, allows a claimant to bring a direct action for bad faith against the insurer without involvement by the insured.  F.S.A. § 624.155.

reasonable opportunities to settle Mezquital's claims within policy limits before there was a lawsuit.  (Doc 7-2, 7-7, 7-9 and Doc 26, ¶¶40-55)  If AmFam had accepted one, there would have been no lawsuit and no $30 million judgment.  (Doc 26, ¶¶57-58)  AmFam's cause of action alleges that Mr. Almassud's behavior caused the judgment.  Mr. Almassud's well-plead complaint alleges that AmFam's behavior caused the judgment.  Mr. Almassud's claim that AmFam negligently or in bad faith failed to settle is a logical and necessary counterpart to AmFam's theories as to the proximate cause of the $30 million judgment.  They will involve the same witnesses and same documents.  The two claims should proceed together, and the Court should deny AmFam's motion.

Furthermore, if AmFam were correct that Mr. Almassud has no cause of action – and AmFam is incorrect – its action would be premature.  AmFam sought a ruling that it "has no obligation to pay the judgment."  (Doc 1, p.18)  If the appeal ends in reversal, AmFam's duty to indemnify Mr. Almassud will be speculative and not ripe.  If this Court accepts AmFam's arguments as to the effect of the appeal, the Court would have to dismiss AmFam's claim as well.

AmFam alone decided on the timing of this lawsuit.  AmFam believes it should be allowed to litigate its claim – a claim that would not exist or be necessary if AmFam had not failed to settle – and that Mr. Almassud's claims that

will involve the same witnesses and the same documents should be dismissed.

AmFam wants several bites at the apple.  AmFam certainly expected

counterclaims, and all of the claims should be litigated now in this single action.

5.    Policy terms do not support dismissal.

Under the policy, the most AmFam will pay for any judgment is the policy

limits.  (Doc 1-1, p.8)  If those terms controlled, a cause of action under *Holt*

would not exist.  Georgia law allows insureds to sue insurers once the insurer fails

to fulfill its duties and harms the insured, notwithstanding policy terms to the

contrary.  *E.g.*, *S. Guar. Ins. Co. v. Dowse*, 278 Ga. 674, 676, 605 S.E.2d 27, 29

(2004).  If all provisions of the policy are to apply, Mr. Almassud will never have a

cause of action against AmFam.  The policy conditions on which AmFam relies

are inapplicable, and this Court should deny AmFam's motion.

**C.    AmFam Had a Duty to Investigate, And Breach of that
        Duty Supports a Cause of Action.**

"The law does require [] that in **conducting its investigation** the insurer

accord the interest of its insured the same faithful consideration it gives its own

interest."  *Hulsey v. Travelers Indem. Co. of Am.*, 460 F. Supp. 2d 1332, 1336

(N.D. Ga. 2006) (emphasis added).  An insurance company is charged "with the

duty to exercise ordinary care in investigating a case in the determination of

whether to defend it or settle it."  *Cotton States Mut. Ins. Co. v. Phillips*, 110 Ga.

17

App. 581, 584, 139 S.E.2d 412, 415 (1964).  AmFam's failure to settle is
determined "under the totality of the circumstances."  *Butler v. First Acceptance*,
652 F. Supp. 2d 1264, 1277 (N.D. Ga. 2009).

In this case, the totality of circumstances includes AmFam's failure to
adequately investigate the claim and retain competent claims professionals.  (Doc
26, ¶¶ 91 and 97)  AmFam moves to dismiss these "claims" as if they were distinct
causes of action, which they are not.  They are factual allegations within the
confines of Count I.  AmFam's poor investigation explains why AmFam decided
to go to trial rather than settle.  *Phillips, supra*.  The poor investigation supports the
cause of action for failure to settle, but it is not a cause of action itself.  *Contra*,
*Camacho v. Nationwide*, 13 F. Supp. 3d 1343, 1362-63 (N.D. Ga. 2014)
(dismissing separate cause of action for negligent claims handling).

AmFam makes the same argument with respect to paragraphs that include
factual allegations in support of the breach of fiduciary duty claim.  That claim is
addressed below.  Section C of AmFam's brief (doc 41-1, pp.14-16) is "subsumed"
by other sections of its brief and should be ignored.

**D.    AmFam Breached its Fiduciary Duty, and Mr. Almassud Has a Remedy Under Georgia Law.**

1.    Liability insurers have a fiduciary duty when defending third-party claims against their insureds.

Allegations that a liability insurer provided a defense that damaged the insured supports a claim for breach of fiduciary duty that withstands a motion to dismiss. *Skinner v. Progressive*, 2013 WL 12073464 (N.D. Ga.). In *Skinner*, the insured (Skinner) was subjected to an excess judgment and alleged negligent or bad-faith failure to settle. *Id*. at *1. Discovery revealed that the insurer provided a defense that harmed Skinner, a "permissive user," by protecting Progressive's "named insured" at Skinner's expense. *Id*. at *2. Skinner moved to amend his complaint to allege breach of fiduciary duty. *Id*. The insurer argued that the fiduciary duty claim was "futile" because it could not survive a motion to dismiss. *Id*. This Court disagreed, ruling that a claim that the insurer "breached its fiduciary duty to [the insured]" in providing a defense survives a motion to dismiss. *Id*. at 3.

"[T]he insurer owes fiduciary duties of good faith **when defending** or settling **a third-party claim** on behalf of the insured." *Prime Mgmt. Consulting v. Certain Underwriters*, 2007 WL 4592099, *5 (N.D. Ga.) (emphasis added) (distinguishing between first-party claims). *See also*, *Thomas v. Atlanta Cas. Co.*, 253 Ga. App. 199, 205, 558 S.E.2d 432, 439-40 (2001) (referring to insurer's

19

"fiduciary duty"); *Liberty Mut. Fire Ins. Co. v. Cagle's, Inc.*, 2010 WL 5288673,

*3 (N.D. Ga.) (acknowledging existence of fiduciary duty with third-party claims).

"Fiduciary duties and obligations are owed by those in confidential

relationships." *Atlanta Mkt. Ctr. Mgmt., Co. v. McLane*, 269 Ga. 604, 606, 503

S.E.2d 278, 281 (1998).  The General Assembly defines a confidential fiduciary

relationship as "[a]ny relationship … resulting from contracts, where one party is

so situated as to exercise a controlling influence over the . . . interest of another."

O.C.G.A. § 23-2-58.  In this case, AmFam had a contractual duty to defend Mr.

Almassud.  The contractual relationship gave AmFam power to exercise

controlling influence over Mr. Almassud's interest in the defense.

Mr. Almassud alleges facts showing how AmFam abused its power by

directing the defense to benefit itself and to harm Mr. Almassud.  Before the

underlying lawsuit, AmFam knew the Jeep was used "off-road."  (Doc 26, ¶¶24-

25)  During the underlying lawsuit, Mr. Almassud responded to interrogatories

acknowledging that he used the Jeep off road.  AmFam's in-house counsel

admitted AmFam had made a grave mistake by not settling.  (Doc 26, ¶61)

AmFam conducted the defense to pursue a risky defense theory contradicting facts

known to it.  When the plan backfired, AmFam decided to blame Mr. Almassud.

AmFam's attorney led Mr. Almassud to criminal counsel and caused Mr.

Almassud to unnecessarily plead the Fifth.  (Doc 26, ¶70)  On Appeal, AmFam

hired new counsel who, without Mr. Almassud's consent or knowledge, made

factually incorrect representations to the court that were beneficial to AmFam in

this declaratory judgment action and detrimental to Mr. Almassud.  (Doc 26, ¶¶72-

73)  Although there is a clear conflict of interest, AmFam continues to control Mr.

Almassud's defense and refuses his requests for independent counsel.  (Doc 26,

¶¶74-75)  Taking these allegations as true, and granting reasonable inferences to

Mr. Almassud, **AmFam is using its control of the defense in the underlying**

**lawsuit to create a record that will benefit AmFam in this lawsuit**.

Moreover, AmFam's complaint in this action breached its fiduciary duty by

disclosing information protected by the attorney-client privilege and work-product

doctrine.  AmFam has put at issue Mr. Almassud's oral statement  (doc 26, ¶¶12-

13) and communications with counsel (doc 26, ¶32) – previously unavailable to

Mezquital.  In a new trial, she may be able to use it to her benefit and Mr.

Almassud's detriment.  AmFam was entrusted with confidential information and

breached its fiduciary duty by disclosing it to Mr. Almassud's opponent.

Unfortunately, the "bell is rung" and AmFam cannot undo its disclosure.  The

disclosures are outrageous slander, and Mr. Almassud has the right to expose them

as untruths, to defend his rights under the policy and restore his good name.

AmFam's argument that Mr. Almassud's failure-to-settle claim obviates his fiduciary-duty claim suffers from a logical fallacy.  Mr. Almassud does not allege an opportunity to settle within policy limits during the underlying lawsuit.  Those events took place before, but most facts supporting breach of fiduciary duty took place after.  Under AmFam's logic, it could do anything it wanted during the underlying lawsuit and never be exposed to liability.  That is not the law.  AmFam controlled the defense in the underlying lawsuit as Mr. Almassud's fiduciary and to his detriment, giving him a claim for breach of fiduciary duty.

2.     AmFam cites the wrong law.

There is a big difference between first-party and third-party claims.[5] AmFam cites cases dealing with first-party claims.  *Nash v. Ohio Nat. Life Ins. Co.*, 266 Ga. App. 416, 597 S.E.2d 512 (2004) (first-party life insurance claim); *State Farm v. Fordham*, 148 Ga. App. 48, 250 S.E.2d 843 (1978) (first-party property-damage claim); *Fowler v. Prudential*, 214 Ga. App. 766, 449 S.E.2d 157 (1994) (first-party UM claim); *Walsh v. Campbell*, 130 Ga. App. 194, 202 S.E.2d 657 (1973) (first-party uninsured motorist claim).  AmFam cites the third-party case of *Camacho, supra*, but *Camacho* did not rule on the existence of a fiduciary duty.  13 F.Supp.3d at 1364.  *Camacho* dealt with breach of the duty to settle.

---

[5] http://insurancelawhelp.com/first-party-vs-third-party-insurance-coverage

### E.     Fraud and Misrepresentation

Mr. Almassud's allegations are made with great particularity and satisfy Rule 9(b).  AmFam misrepresented facts:  (1) its actual knoweldge, (2) questions it asked and (3) Mr. Almassud's answers.  (Doc 26, ¶¶15 and 104-05) AmFam represented it was defending on Mr. Almassud's behalf while secretly planning to throw him to the wolves by way of incorrect statements to the trial court.  (Doc 26, ¶¶73 and 108)  The who, what, where and how questions are answered.

AmFam's brief incorrectly states that all misrepresentations occurred in the filing of the instant action.  The allegations cited above prove AmFam wrong. Thus, AmFam's reliance on Rule 11 is misplaced.  Unlike the insured in *Royal Surplus v. Coachman*, Mr. Almassud's fraud claim does not seek to recover for the fact that AmFam brought this case.  184 Fed. App'x 894, 903 (11th Cir. 2006). Mr. Almassud seeks to recover for misrepresentations AmFam made to Mr. Almassud regarding AmFam's true goal in controlling Mr. Almassud's defense. AmFam made other misrepresentations to Mr. Almassud in leading him to take the Fifth at trial, a fact AmFam now uses to its benefit.  (Doc 26, ¶¶70 and 109)  That some of these facts might support alternative causes of action is expressly allowed. Fed. R. Civ. P. 8(d).  Mr. Almassud's allegations are not threadbare or conclusory, and this Court should deny AmFam's motion.

### F.    Punitive Damages Are Recoverable.

Mr. Almassud agrees that his punitive damages claim is derivative of other claims.  So long as one of his claims survives this motion – and they should all survive – this Court should deny the motion to dismiss the punitive damages claim.

### G.    Attorneys' Fees are Recoverable.

Attorneys' fees under O.C.G.A. § 13-6-11 are available for negligent or bad-faith failure to settle.  *Smoot*, 381 F.2d at 339 (approving award of fees under § 13-6-11, though the statute was differently numbered under then-current codification).[6]  Federal district courts agree.  *Dickerson v. Am. Nat. Prop. & Cas. Co.*, 2009 WL 1035131, at *10 (M.D. Ga.) (denying insurer's motion for summary judgment on claim for fees under § 13-6-11);  *Whiteside v. Infinity Cas. Ins. Co.*, 2008 WL 3456508, at *16 (M.D. Ga.) (same).

AmFam's invocation of O.C.G.A. § 33-4-6 invites error.  Mr. Almassud's cause of action for negligent or bad-faith failure to settle arises under the common law and has nothing to do with O.C.G.A. § 33-4-6.  "[AmFam]'s argument that O.C.G.A. § 33-4-6 is the exclusive remedy for bad faith failure to settle claims of this type is not correct."  *Canal Indem. Co. v. Greene*, 265 Ga. App. 67, 72, 593 S.E.2d 41, 46 (2003).  "The penalty provisions of the Insurance Code are

---

[6] *Smoot* is binding. *Bonner v. Prichard*, 661 F.2d 1206, 1210 (11th Cir. 1981).

inapplicable and provide no measure of recovery." *Evans*, 116 Ga. App. at 94

(rejecting application of § 33-4-6, though the statute was differently numbered

under then-current codification); and *Cotton States v. Phillips*, 110 Ga. App. at

583-84 (same).

## III.   CONCLUSION

Under the facts alleged (most of which are undisputed), and giving all

reasonable inferences to Mr. Almassud, AmFam engaged in a coverup to distract

attention from its dismally incompetent investigation and its ruinous decision to go

to trial rather than settle.  The same discovery needed to defend against AmFam's

claims will support Mr. Almassud's claims.  Thus, allowing all claims to remain

will not require different discovery.  This Court should deny AmFam's motion.

Respectfully submitted February 9, 2017.

> */s/ Richard E. Dolder*
> James ("Jay") Sadd
> Georgia Bar No. 622010
> Richard E. Dolder, Jr.
> Georgia Bar No. 220237
> SLAPPEY & SADD
> 352 Sandy Springs Circle
> Atlanta, Georgia 30328
> (404) 255-6677 (telephone)
> jay@lawyersatlanta.com
> rich@lawyersatlanta.com
> Attorneys for Mr. Almassud

## <u>CERTIFICATE OF SERVICE</u>

The foregoing **Defendant Almassud's Response to American Family Insurance Company's Motion to Dismiss** was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record in this action.  I further certify that the forgoing was prepared in Times New Roman 14pt font and otherwise complies with Local Rule 5.1.

Respectfully submitted February 9, 2017.

*/s/ Richard E. Dolder*
Richard E. Dolder
Georgia Bar No. 220237
SLAPPEY & SADD, LLC
352 Sandy Springs Circle
Atlanta, Georgia 30328
(404) 255-6677 (voice)
rich@lawyersatlanta.com
Attorney for Mr. Almassud