IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| AMERICAN FAMILY INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | FILE NO. 1:16-CV-04023-RWS |
| ABDULMOHSEN ALMASSUD AND LUISA CRUZ MEZQUITAL, | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS DEFENDANT ALMASSUD'S AMENDED COUNTERCLAIMS

### I.     Introduction

Rather than litigate the coverage issues raised by AmFam's Complaint for declaratory judgment, defendant Abdulmohsen Almassud filed counterclaims asserting (1) a claim that is not yet ripe for adjudication (AmFam's alleged "bad faith" failure to settle) and (2)  causes of action (breach of fiduciary duty, fraud and/or misrepresentation, attorneys' fees, and punitive damages) that Georgia law does not allow in this context.  While Almassud's failure to settle claim should be dismissed without prejudice pending a final judgment in the

underlying action (which may render his claim moot), his remaining

counterclaims should be dismissed with prejudice for failure to state a claim.

## II.   Argument and Citation of Authority

**A.**   **Almassud's failure to settle claim is premature before final judgment in the underlying action**

**1.**   **Almassud's counterclaims are not ripe under federal law regarding jurisdiction**

As discussed in AmFam's opening brief, the issue of Almassud's

counterclaims being ripe is a jurisdictional issue, which means it is a question of

federal law.  (See [Doc. 41-1] at 7-9); see also S. Pilot Ins. Co. v. CECS, Inc., 15 F.

Supp. 3d 1284, 1294-95 (N.D. Ga. 2013).  The Eleventh Circuit has made clear that

"if a plaintiff's claimed injury depends on the resolution of other judicial

proceedings, there may well be fitness concerns that render the plaintiff's claim

presumptively unripe." Mulhall v. UNITE HERE Local 355, 618 F.3d 1279, 1291

(11th Cir. 2010).  See also S. Pilot, 15 F. Supp. 3d at 1294-95 (dismissing insureds'

third-party failure to procure claims against insurance agent as premature

because the insureds' claim was dependent upon the resolution of the

declaratory judgment action between the insurer and insureds).  Because

Almassud's failure to settle claim depends on resolution of the underlying

action, which remains pending, it is presumptively unripe and should be dismissed without prejudice.

### 2.    Almassud has not suffered any harm until there is a final judgment against him

A claim against an insurance company for its "bad faith failure to settle" sounds in tort.  See S. Gen. Ins. Co. v. Ross, 227 Ga. App. 191, 196, 489 S.E.2d 53, 57-58 (1997).  And, until there has been an injury, a plaintiff may not bring a tort action against the defendant.  E.g., Hoffman v. Ins. Co. of N.Am., 241 Ga. 328, 329-30, 245 S.E.2d 287, 289 (1978).  When an insured (or his assignee) asserts a claim against an insurance company for failing to settle within policy limits, the basis of the claim is the insured's liability to the tort plaintiff for an amount in excess of the policy limits.  Absent a final judgment in excess of the policy limits, the insured has suffered no harm and, thus, has no basis to assert claims against the insurance company.  (See [Doc. 41-1] at 9-11.)  See also Hall v. Allstate Ins. Co., 880 F.2d 394, 400 (11th Cir. 1989) (predicting that Georgia courts "would hold that an insured's cause of action for its insurer's refusal to pay an adverse judgment under a liability insurance contract does not accrue until entry of *final judgment* against the insured.") (emphasis added).

Although the jury in the underlying action returned a verdict against Almassud in excess of the policy limits, that judgment is not final.  The trial court has not yet entered an order on Almassud's motion for new trial and all parties acknowledge that the verdict will be appealed.[1]  (See [Doc. 41-1] at 12-14.)  Thus, there is no final judgment against Almassud, and he has suffered no harm.

Further, as set forth in AmFam's opening brief, every court that has considered the issue has held that an insured may not bring a claim against his insurance company for failure to settle until there is a final judgment in the underlying action.  (See [Doc. 41-1] at 11-12) (collecting cases).  In response, Almassud argues that other jurisdictions have ruled that a claim for failure to settle accrues upon entry of the tort judgment even if the judgment is appealed, citing Carpenter v. Automobile Club Interinsurance Exchange, 58 F.3d 1296 (8th Cir. 1995) in support.  (See [Doc. 46] at 12-13.)  Almassud, however, fails to note that the issue in Carpenter was whether the insured's failure to settle claim was barred by the statute of limitations.  The parties disputed when the claim accrued: the insurer contended that the claim accrued when it refused the tort

---

[1] The State Court's docket is available at https://publicrecordsaccess.fultoncountyga.gov/Portal/Home/WorkspaceMode?p=0, by clicking on the "Smart Search" button and searching using the case number for the underlying tort suit: "14ev001930."  In ruling on AmFam's motion to dismiss, this Court can consider the docket from the underlying tort suit as it is a public record. E.g., Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) (per curiam) (reiterating that, in ruling on a motion to dismiss, a court can consider public records, such as filings from other courts).

claimant's offer to settle (before the tort suit was even filed), and the insured contended the claim accrued when the judgment in the tort suit was entered.  Id. at 1300.  After surveying Arkansas law, the Eighth Circuit concluded that the insured was correct, and the claim accrued upon entry of the judgment in the tort suit.  Id. at 1300-01.  Notably, neither party contended that the claim accrued once the judgment in the tort suit was final (i.e., after it was affirmed); thus, this non-binding decision involving Arkansas substantive law has no persuasive value here.

### 3.    The damages claimed by Almassud are speculative

Perhaps recognizing that his claim based on the excess verdict is premature before there is a final judgment, Almassud describes damages which he allegedly suffered and for which he seeks to recover.  However, these damages are either speculative or not allowed under Georgia law.

For example, Almassud contends that he has suffered damages simply by the existence of the judgment in the underlying action because it has damaged his credit score.  (See [Doc. 46] at 9.)  This is both speculative and disingenuous.  The State Court has not yet ruled on Almassud's motion for new trial.  (See supra, note 1.)  Under Georgia law, the filing of a motion for new trial operates as a supersedeas.  See O.C.G.A. § 9-11-62(b).  As such, no collection efforts can take

place while the motion for new trial is pending, and there has been no harm to

Almassud's credit score.

Almassud also contends that he has been damaged because "AmFam will

not post a bond, allowing Mezquital to collect during the appeal." ([Doc. 46] at

9;) (see also Ex. A to Almassud's Resp. [Doc. 46-1]).  Yet, this contention is

completely contradicted by the exhibit relied upon by Almassud.  Specifically,

the letter attached to Almassud's response explicitly states that, while not

required under the policy, "in an effort to protect Mr. Almassud's interests while

the underlying tort suit is on appeal," AmFam is willing to post a bond for the

amount of the judgment within the policy's limits plus the applicable interest.

([Doc. 46-1] at 2.)  The letter does acknowledge that such a bond will not satisfy

Mezquital's request for a bond in the amount of $25,000,000, but suggests that

Almassud work with his counsel and request that the State Court limit the

amount of the supersedeas bond required.  (Id.)[2]  Thus, Almassud's contention

that AmFam refused to post a bond is simply false and should be disregarded.

E.g., Crenshaw v. Lister, 556 F.3d 1283, 1292 (11th Cir. 2009) (reiterating that,

"'when the exhibits contradict the general and conclusory allegations of the

pleading, the exhibits govern'").  And because the State Court has yet to rule on

---

[2] As reflected in the State Court's docket, see supra, note 1, Almassud's defense counsel (retained by AmFam) in the underlying action filed a brief on February 16, 2017 asking the State Court to limit the amount of the bond.

the issue of a supersedeas bond, (see supra, note 1,) Almassud's contention about potential damages because of collection efforts (that have not – and cannot – begin) is speculative and premature.

Almassud's contention that he has incurred damages in the form of attorneys' fees is misplaced.  While Almassud admits that AmFam is providing him with a defense in the underlying action, he seeks to recover his attorneys fees "incurred" in this declaratory judgment action.  ([Doc. 46] at 10.)  However, there is no legal basis for Almassud to recover such fees for his tort claims nor are they related to the alleged failure to settle by AmFam.  See, e.g., Ross v. St. Paul Reinsurance Co., Ltd., 279 Ga. 92, 94, 610 S.E.2d 57, 59 (2005) (reiterating that "'the question of whether the policy provides coverage for the claim is separate from the legal consequences of an insurer's refusal to indemnify or defend'"); McCall v. Allstate Ins. Co., 251 Ga. 869, 871-72, 310 S.E.2d 513, 515 (1984) (explaining that O.C.G.A. § 13-6-11 "provides for the allowance of expenses of litigation under in *contract cases generally*") (emphasis added). Because Almassud acknowledges that he is only pursuing tort claims against AmFam, not contract claims, ([Doc. 46] at 7-8,) O.C.G.A. § 13-6-11 is not applicable.

Next, Almassud contends he can recover damages for "inconvenience and mental distress":

> Mr. Almassud has incurred attorneys' fees because of AmFam's actions and experienced inconvenience, expense, mental distress, and other damages.  (Doc. 26, ¶84)  Had AmFam settled, Mr. Almassud would not have been sued, would have never been compelled to give a deposition, would have never testified at trial, and would not be faced with crushing financial debt.

([Doc. 46] at 6-7, 10.)[3]  AmFam does not dispute that Georgia law recognizes a cause of action for intentional infliction of emotional distress.  However, Almassud has not asserted such a claim, and the facts he has alleged fall far short of satisfying the "stringent" burden" of such a claim.  Clary v. Allstate Fire & Cas. Ins. Co., No. A16A2186, 2017 Ga. App. LEXIS 29, *14-15 (Ga. Ct. App. Feb. 2, 2017) (quoting Thompson-El v. Bank of Am., 327 Ga. App. 309, 312-13, 759 S.E.2d 49 (2014)).

In addition, Almassud contends that his claim is ripe because he can recover nominal damages.  ([Doc. 46] at 11.)  While Almassud is correct that Georgia law allows nominal damages for tort claims, there is no basis to assert a

---

[3] It appears that Almassud is contending that AmFam is liable for anxiety allegedly suffered by Almassud as a result of various things he was required to do as part of the underlying action.  The Eleventh Circuit has described such a contention as "novel."  Delancy v. St. Paul Fire & Marine Ins. Co., 947 F.2d 1536, 1554 (11th Cir. 1991).  Like the plaintiff in Delancy, Almassud has cited no authority for his "novel proposition" that AmFam can be liable for any alleged anxiety.  Id. See also id. at 1551-52, 1552 n.34 (noting that Georgia law is unclear whether an insurer can be liable for emotional distress based on a failure to settle claim).

claim for such damages until there is a final judgment in the underlying action. In other words, if it is premature to assert a claim against an insurance company for "bad faith failure to settle" before there is a final judgment against the insured – as is the rule in every jurisdiction that has considered the issue – a claim for "nominal damages" – whatever those might be – should not go forward just to satisfy the insured's desire to sue his insurance company before he has actually been harmed.

In a last ditch effort to save his premature claim of failure to settle, Almassud contends that no Georgia case has "condoned the drastic remedy of dismissal." ([Doc. 46] at 11.)  However, AmFam does not seek dismissal of the failure to settle claim on the merits (with prejudice); it simply seeks dismissal of the claim as not ripe (without prejudice), which would allow Almassud to bring the claim in the future if there is a final judgment against him in excess of policy limits.  See, e.g., S. Pilot, 15 F. Supp. 3d at 1294-95 (dismissing without prejudice insured's unripe claims against insurance agent for failure to procure, and noting there was no hardship because claims could be re-filed at appropriate time).

### 4.   The policy bars Almassud's claims

As noted in AmFam's opening brief, the plain language of the policy's "no action" clause further demonstrates that Almassud's claims are premature until

there is a final judgment in the underlying action.  (See [Doc. 41-1] at 12-14.)  In

response, Almassud contends that the "no action" clause in his policy has no

bearing on whether this is the proper time for his claim because Georgia law

allows insureds to sue their insurers once the insurer fails to fulfill its duties.

(See [Doc. 46] at 17) (citing S. Guar. Ins. Co. v. Dowse, 278 Ga. 674, 676, 605 S.E.2d

27, 29 (2004).)  However, Almassud's exact argument was rejected by the

Supreme Court of Georgia in Trinity Outdoor, LLC v. Central Mutual Insurance

Co., 285 Ga. 583, 679 S.E.2d 10 (2009), where the court enforced a materially

identical "no action" clause and explained that Dowse applies only when the

insurer "wholly abandon[s] its insured" and refuses to defend the tort suit

against the insured, not when the insurer is providing a defense to the insured.

That is not the situation here, as AmFam continues to defend Almassud against

Mezquital's claims.  Indeed, AmFam has filed this declaratory judgment action to

determine its duty, if any, to provide coverage to Almassud.

Under Almassud's logic, once an insurer (defending its insured in a tort

suit) refused a tort claimant's offer to settle, the insured could disregard all of the

conditions in the policy, enter into a unilateral settlement with the claimant for

an amount in excess of the policy limits, and sue the insurer for failure to settle.

However, the Supreme Court of Georgia has rejected that exact argument.  E.g.,

Piedmont Office Realty Trust, Inc. v. XL Specialty Ins. Co., 297 Ga. 38, 771 S.E.2d

864 (2016); Trinity Outdoor, 285 Ga. at 584-87, 679 S.E.2d at 11-13.  See also Hall,

880 F.2d at 400 (predicting that Georgia courts "would hold that an insured's

cause of action for its insurer's refusal to pay an adverse judgment under a

liability insurance contract does not accrue until entry of *final judgment* against

the insured") (emphasis added).

**B.     Georgia law does not recognize a claim against an insurer for alleged breach of fiduciary duty**

Contrary to Almassud's argument, no Georgia court has held that an

insurer has a fiduciary duty to its insured in the third-party liability context.

While AmFam acknowledges that most of the cases addressing the issue arise in

the first-party, as opposed to third-party, context, this does not change the fact

that "Georgia courts have repeatedly and consistently held that the insurer-

insured relationship does not itself impose fiduciary responsibilities upon the

insurer."  Prime Mgmt. Consulting, & Inv. Servs., LLC v. Certain Underwriters at

Lloyd's London, No. 1:07-cv-1578-WSD, 2007 U.S. Dist. LEXIS 94987, *15 (N.D.

Ga. Dec. 28, 2007) (collecting cases).  In Prime Mgmt., which Almassud cites in

his brief ([Doc. 46] at 19), the court noted that it could identify

> only one circumstance where Georgia courts allow tort actions for
> breach of fiduciary duties between an insured and his insurer: the

> insurer owes fiduciary duties of good faith when defending or
> settling a third-party claim on behalf of the insured.  E.g., Thomas v.
> Atlanta Cas. Co., 253 Ga. App. 199, 558 S.E.2d 432, 438-39 (Ga. App.
> 2001); Arrow Exterminators[, Inc. v. Zurich Am. Ins. Co.], 136 F.
> Supp. 2d [1340,] 1354 [(N.D. Ga. 2001).]

Id. at *15-16.

Notwithstanding this statement, a closer examination of the case law

reveals that the "one circumstance" does not actually exist.  In Thomas, which

was cited as the one circumstance where Georgia courts allow insureds to sue

insurers for breach of fiduciary duties, the insured sued the insurer for "bad faith

in failing to settle the [tort] case for policy limits."  253 Ga. App. at 199, 558 S.E.2d

at 435.[4]  The insured did not assert any claim for breach of fiduciary duty; thus,

any statement in Thomas about fiduciary duties is purely dicta.  See Metro. Prop.

& Cas. Ins. Co. v. Crump, 237 Ga. App. 96, 98-99, 513 S.E.2d 33, 35 (1999).  In

Thomas, the court, seemingly reiterating the general failure to settle rule in

Georgia stated, "[w]here an insurer violates its fiduciary duty to its insured and

puts its interests superior to its insured, such conduct may be found to be

tortious, either negligent or bad faith."  253 Ga. App. at 206, 558 S.E.2d at 439-40.

In support of this proposition, the court inexplicably cited Southern General

Insurance Co. v. Holt, 262 Ga. 267, 268-69, 416 S.E.2d 274 (1992) and McCall v.

---

[4] Because the word "fiduciary" does not even appear in the Arrow Exterminators decision, it lends no support to the existence of a fiduciary relationship between an insured and his insurer.

Allstate Ins. Co., supra.  The Thomas court's reliance on Holt and McCall is bizarre because the word "fiduciary" does not appear in either of those decisions. Thus, it is clear that, contrary to the court's statement in Prime Mgmt., there are no circumstances where Georgia courts have found a fiduciary relationship between an insurer and his insurer.

Other than the unsupported dicta in Thomas, it appears that the only other reference from a Georgia court to a fiduciary relationship between an insured and his insurer was in United States Fidelity & Guar. Co. v. Evans, 116 Ga. App. 93, 156 S.E.2d 809 (1967).  The Evans court included an extensive quote from an insurance law treatise describing the relationship between the insurer and insured as "somewhat of a fiduciary one."  Id. at 95, 156 S.E.2d at 811 (quoting 7A Appleman, Insurance Law and Practice 553, § 4711).  However, in a subsequent case, the Court of Appeals of Georgia held that a jury charge using the entire quote from the treatise in Evans was wrong as a matter of law because it did "not reflect the law of this state."  Nat'l Emblem Ins. Co. v. Pritchard, 140 Ga. App. 350, 350, 231 S.E.2d 126,126 (1976).  This quote does not create a cause of action not otherwise recognized under Georgia law.

A subsequent decision from this District reaffirms the rule that an insurer may not be sued for breach of fiduciary duty as a matter of law.  In Ogle v.

<u>Nationwide Insurance Co. of America</u>, No. 1:04-cv-2802-GET, 2006 U.S. Dist.

LEXIS 8188 (N.D. Ga. Feb. 21, 2006), the tort plaintiff received an assignment of

rights from the insured-tortfeasor and sued the insurer for failure to settle.  In

responding to the insurer's motion for summary judgment, the plaintiff alleged

that the insurer was liable for breaching its fiduciary duty to its insured.  <u>Id.</u> at

*12.  In rejecting the argument and finding no basis for liability, the <u>Ogle</u> court

noted that "'a fiduciary relationship does not exist between an insurer and its

insured.'"  <u>Id.</u> (quoting <u>Clark v. Byrd</u>, 254 Ga. App. 826, 827, 564  S.E.2d 742

(2002)).  If this Court recognizes a claim for breach of fiduciary duty against

AmFam, it will be creating Georgia law.

**C.   <u>Almassud's claim for fraud and/or misrepresentation fails as a matter of law</u>**

While Almassud argues that he has alleged his fraud claim with "great

particularity" as required by Rule 9(b), even a cursory review of his response and

counterclaim demonstrate otherwise.  ([Doc. 46] at 23.)  In his response,

Almassud contends that "AmFam misrepresented facts: (1) its actual knowledge,

(2) questions it asked and (3) Mr. Almassud's answers.  (Doc. 26, ¶¶ 15 and 104-

05[.])[.]"  (<u>Id.</u>)  The entirety of the allegations in Paragraphs 15, 104, and 105 of

Almassud's counterclaim are as follows:

15.

> Prior to receiving any demand to settle Mezquital's claims, Ms.
> Lyke referred to Mr. Almassud's Jeep as a 'specialized off road vehicle.'

104.

> Mr. Almassud incorporates and realleges all paragraphs of these
> counterclaims as if fully set forth herein.

105.

> AmFam has purposefully and knowingly misrepresented its actual
> knowledge of the Jeep as an off-road vehicle.

(Doc. 26 at ¶¶ 15 and 104-05) (emphasis added).

These allegations do not satisfy Rule 9(b), as they do not allege

> "(1) precisely what statements were made in what documents or
> oral representations or what omissions were made, and (2) the time
> and place of each such statement and the person responsible for
> making (or, in the case of omissions, not making) same, (3) the
> content of such statements and the manner in which they misled
> [Almassud], and (4) what [AmFam] obtained as a consequence of
> the fraud."

Crawford v. Green Servs., LLC, No. 2:14-CV-00279-RWS, 2015 U.S. Dist. LEXIS

40879, *6 (N.D. Ga. Mar. 31, 2015)  (quoting U.S. ex rel. Clausen v. Lab. Corp. of

Am., Inc., 290 F.3d 1301, 1310 (11th Cir. 2002)).  To satisfy the requirements, at a

minimum, Almassud would need to allege where and when AmFam allegedly

misrepresented (1) its actual knowledge of Almassud's Jeep as an off road

vehicle; (2) the questions it asked Almassud; (3) Almassud's answers to those

questions.  It is obvious why Almassud has not done so: his claims are based on the allegations in AmFam's complaint for declaratory judgment.  As explained in AmFam's opening brief, it is clear that Almassud is simply trying to turn an issue that, at best, is a Rule 11 issue, into a tort claim.[5]  ([Doc. 41-1] at 17-18.)  Such tactics cannot be condoned.

And even if Almassud had satisfied the particularity requirement of Rule 9(b) – which he has not – his claim still fails as a matter of law.  The essential elements of a fraud claim are: "'(1) false representations made by the defendant, (2) which the defendant knew were false, (3) made with an intent to deceive the plaintiff, (4) justifiable and detrimental reliance by the plaintiff on such representations, and (5) damages suffered by the plaintiff as a result.'"  Vernon v. Assurance Forensic Accounting, LLC, 333 Ga. App. 377, 390, 774 S.E.2d 197, 209 (2015).  Clearly, Almassud knew what questions AmFam asked him during its investigation and knew what his answers to those questions were.  Thus, it is axiomatic that he did not and could not as a matter of law detrimentally rely on any such representations.  Without detrimental reliance, his claim fails as a matter of law.  See, e.g., Next Century Communs. Corp. v. Ellis, 214 F. Supp. 2d

---

[5] There is no question that, if Almassud's counterclaims were pending in state court, they would be subject to Georgia's Anti-Slapp Statute, O.C.G.A. § 9-11-11.1.  See, e.g., O.C.G.A. § 9-11-11.1(c)(1), (c)(2).  The Eleventh Circuit, however, has held that Georgia's Anti-Slapp Statute conflicts with Rule 11 and, therefore, does not apply in federal cases based on diversity jurisdiction.  Royalty Network, Inc. v. Harris, 756 F.3d 1351 (11th Cir. 2014).

1366, 1370 (N.D. Ga. 2002), *aff'd*, 318 F.3d 1023 (11th Cir. 2013) ("Th[e] failure to plead justifiable reliance requires dismissal of Plaintiff's fraud and negligent misrepresentation claims."); Prime Mgmt., 2007 U.S. Dist. LEXIS 94987, *22-23 (dismissing fraud claim due to failure to adequately allege any facts supporting justifiable and detrimental reliance or damages elements).

Almassud also contends that "AmFam represented that it was defending on Mr. Almassud's behalf while secretly planning to throw him to the wolves by way of incorrect statements to the trial court. (Doc. 26, ¶¶ 73 and 108[.])" (Doc. 46 at 23.) The entirety of the allegations in Paragraphs 73 and 108 of Almassud's counterclaim are as follows:

*73.*

*In briefing the motion for new trial, counsel retained by AmFam to protect Mr. Almassud's interest made incorrect factual representations to the court regarding Mr. Almassud without his consent or knowledge.*

*108.*

*AmFam represented that it was acting in the best interest of Mr. Almassud in the Underlying Lawsuit.*

(Doc. 26 at ¶¶ 73 and 108) (emphasis added). Like the previous example, these allegations do not satisfy Rule 9(b). At a minimum, Almassud would need to allege precisely what statements were made, the content of the statements, the manner in which the statements misled Almassud, and what AmFam obtained

as a consequence.  <u>Crawford</u>, 2015 U.S. Dist. LEXIS 40879, *6.  Again, however, even if Almassud had satisfied Rule 9(b), it is clear that his claim fails as a matter of law because there was no reliance or damages.[6]

### III.    Conclusion

WHEREFORE, for the foregoing reasons and those stated in its opening brief, Plaintiff American Family Insurance Company respectfully requests that the Court dismiss the Amended Counterclaims pled by Defendant Abdulmohsen Almassud.

This 23rd day of February, 2017.

**SWIFT CURRIE McGHEE & HIERS, LLC**

/s/ David M. Atkinson
David M. Atkinson
Georgia Bar No. 026460
Jonathan J. Kandel
Georgia Bar No. 940584
Attorneys for Plaintiff

1355 Peachtree Street, N.E.
The Peachtree, Suite 300

---

[6] AmFam also notes that Almassud (and his counsel) know that the allegation in Paragraph 73 of the counterclaim is false and that, as requested by Almassud (and his counsel) the purported representations in the motion for new trial were withdrawn.  Nonetheless, even assuming that allegation is true, which it is not, that allegation cannot support a fraud claim as a matter of law.  <u>See, e.g.</u>, <u>Tom's Amusement Co. v. Total Vending Servs.</u>, 243 Ga. App. 294, 298, 533 S.E.2d 413, 418-19 (2000) (holding that fraud claim failed as a matter of law because representations made not to plaintiff, but to third-parties, does not show that the representations were made with the intent to deceive the plaintiff nor do they show that the plaintiff justified relied, both of which are required elements of a fraud claim); <u>Steimer v. Northside Bldg. Supply Co.</u>, 202 Ga. App. 843, 845, 415 S.E.2d 688, 689-90 (1992) (same, and noting that "[r]ather than relying on the representations, [plaintiffs] disputed them as soon as ([they] had knowledge thereof) and maintained [their] position consistently thereafter.  [Plaintiffs] never acted on them except in furtherance of [their] denial of their validity.").

Atlanta, GA  30309
(404) 874-8800
david.atkinson@swiftcurrie.com
jonathan.kandel@swiftcurrie.com

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1 D, undersigned counsel certifies that the foregoing

brief was prepared in Book Antigua, 13 point font.

/s/David M. Atkinson
David M. Atkinson

## CERTIFICATE OF SERVICE

I hereby certify that on February 23rd, 2017, I electronically filed the foregoing *REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS DEFENDANT ALMASSUD'S AMENDED COUNTERCLAIMS* with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of said filing to the following attorneys of record:

Ben C. Brodhead
Ashley B. Fournet
Brodhead Law, LLC
3350 Riverwood Parkway, Suite 2230
Atlanta, GA  30339

James (Jay) Sadd
Richard E. Dolder
Slappey & Sadd
352 Sandy Springs Circle
Atlanta, GA  30328

/s/ David M. Atkinson
David M. Atkinson