**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| AMERICAN FAMILY INS. CO., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:16-cv- |
| | ) | |
| v. | ) | 04023-RWS |
| | ) | |
| ABDULMOHSEN ALMASSUD, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

American Family Insurance Company ("AmFam") hereby submits its
Opposition to Defendant's Motion to for Judgment on the Pleadings (Doc 374)
("MJP") as follows:

## I.   INTRODUCTION

Almassud's MJP should be denied for at least three reasons.  Under Georgia
law, AmFam's contract claim is viable. First, it is black letter law that breach of a
cooperation provision is a "breach of the insurance contract."  Under O.C.G.A. § 13-
6-6, in "<u>every</u> case of breach of contract the injured party has a right to damages,"
especially nominal damages.  Second, to sustain a claim for nominal damages,
AmFam need only show a breach of "duty."  Almassud's insurance policy (the
"Policy") sets forth certain cooperation "duties," and AmFam alleges he breached

them.  Third, AmFam has a viable claim for breach of the duty of good faith and fair dealing, and none of Almassud's authority addresses that context.  In Georgia, for condition precedents that arise after the contract is in effect, like a cooperation term, if one party controls the performance of the condition, that party has an implied promise to perform it.  Here, Almassud alone controlled whether he cooperated with AmFam, *i.e.* whether he would disclose all material information, testify truthfully, and the like.  Thus, he was obligated under the Policy to do so.

Separately, Almassud's sole reliance on foreign authority is distinguishable.  Those cases, which all rely upon a single Texas case, are too distinct from Georgia law and the facts here.  They do not assume Georgia's principles that a breach of a non-cooperation provision is a "breach of contract" for which damages must be a remedy or that the non-cooperation provision is subject to the duty of good faith and fair dealing.  Furthermore, other foreign authority supports AmFam.  Cases in California allow an insurer to bring a breach of contract action against the insured based on non-cooperation.  These cases are more in line with Georgia law on the implied duty of good faith and fair dealing and the facts presented here.

Finally, as a technical matter, the pleadings are not closed.  For these reasons, the MJP should be DENIED.

## II.     BACKGROUND

**(A)     The Policy Obligates Almassud To Cooperate As A "Duty" <u>And</u> As A "Condition."**

In Almassud's Policy, his obligation, as an insured, to cooperate arises in two separate places in the Policy.  First, in the event of an accident or loss, the insured has certain "duties," including duties to cooperate:

> If we are prejudiced by a failure to comply with the following **<u>duties</u>**, then we have no duty to provide coverage under this policy.
> …
> B. Other **<u>Duties</u>**
> 1. Each person claiming any coverage of this policy **<u>must</u>** also:
>   a. cooperate with us and assist us in any matter concerning a claim or suit
> …
>   g. cooperate with us and, when asked, assist In:
>      (1) making settlements;
>      (2) securing and giving evidence; and
>      (3) getting witnesses to attend hearings and trials,
>   h. attend hearings and trials.

Doc 1-1, p. 5 (emphasis added).  Second, in the "General Conditions," the Policy requires:

> 6. Cooperation
> Any person claiming any coverage under this policy must cooperate with us in the investigation, settlement and defense of any claim or lawsuit.

Doc 1-1, p. 11.  Thus, by the Policy's plain language, Almassud's duty to cooperate is both a "duty" and a "condition" of coverage.

**(B)     AmFam Alleges Almassud Breached These Duties and Conditions.**

As this Court is aware, this dispute concerns insurance coverage.  On October 21, 2012, Almassud was involved in a car accident with Cruz (the "Accident").  Doc 364 (Second Amended Complaint), ¶ 43.  AmFam insured Almassud's Jeep at the time.  Id., ¶¶ 5-6.  Almassud requested coverage under the Policy.  Id., ¶ 47.  In 2014, Cruz sued Almassud in state court (the "Underlying Case").  Id., ¶ 62.

AmFam investigated the claim, and based on Almassud's representations of the Accident and his use of the Jeep, AmFam provided Almassud a defense. Initially, AmFam took Almassud's recorded statement, wherein he explained that in the moments just prior to the Accident, he lost steering in the Jeep.  Id., ¶ 48.  He also stated he hired Oh's Auto Center ("Oh's") to replace the Jeep's steering kit about one week prior to the Accident.  Id.  Relying upon these representations and the findings of an expert, defense counsel retained by AmFam prepared a defense that Oh's faulty mechanic work caused the Accident.  Id., ¶ 59.

Crucially, however, Almassud did not tell AmFam the whole story.  Rather, from the onset of the claim, Almassud withheld information, testified untruthfully, and otherwise failed to cooperate, including without limitation:

•     Concealment of the Sears inspection.  In his recorded statement, Almassud disclosed that Oh's worked on the Jeep, but he failed to disclose that just

hours after Oh's completed its work, Almassud had Sears Auto Center ("Sears") inspect and work on the Jeep, including a "complete steering, suspension evaluation" and "wheel alignment service." Id., ¶¶ 53-60.  In the Underlying Case, even though defense counsel defended Almassud on the theory Oh's was at fault for the Accident due to faulty mechanic work, Almassud never disclosed the Sears inspection.  Id.

- Concealment of off-roading.  In his recorded statement, Almassud stated he was returning home after a trip to the mountains at the time of the Accident. Id., ¶ 49.  He did not inform AmFam he had engaged in any off-road activity prior to the Accident.  Id.  During the Underlying Case, Almassud concealed from his defense counsel that he had used his Jeep for off-roading on the day of the Accident. Id., ¶¶ 110, 144(b).

- False discovery.  During the Underlying Case, Almassud was asked to help defense counsel respond to interrogatories and document requests.  Id., ¶ 73.  In response to them, he intentionally downplayed his off-roading and did not produce documents material to his defense, including the Sears receipt and numerous photos of him off-roading in the Jeep.  Id., ¶ 73, 144(l)-(m).

- Testifying untruthfully.  At his deposition in the Underlying Case, Almassud was asked questions about inspections of the Jeep and off-roading in the Jeep.  He testified falsely that, among other things, he personally performed the final

inspection of his Jeep, he did not go off-roading on the day of the Accident, he had never taken the Jeep mudding, he had no photos of the Jeep off-road, and he never used his Jeep's winch in connection with off-roading. <u>Id.</u>, ¶ 65. This testimony was intentionally false. <u>Id.</u>, ¶¶ 69-71, 17-42. At trial, Almassud testified falsely to many of the same facts. <u>Id.</u>, ¶ 80.

- <u>Impeachment</u>. At trial, after Almassud initially testified falsely to material facts about his use of the Jeep (as he had done at his deposition), he was impeached spectacularly. <u>Id.</u>, ¶ 81. Cruz' counsel introduced, among other things, photos of him off-roading and mudding in the Jeep. <u>Id.</u>, ¶¶ 39, 81.

- <u>Fifth Amendment testimony</u>. Almassud's impeachment was so successful that the trial judge stopped the trial to conduct an in-chambers conference with counsel and then suspended the trial so that Almassud could consult with criminal counsel about his sworn testimony. <u>Id.</u>, ¶ 82. When trial reconvened the next day, Almassud's cross-examination resumed, but Almassud pled the Fifth Amendment in response to virtually all questions, including whether he inspected the Jeep after Oh's worked on it and concerning his use and off-roading in the Jeep. <u>Id.</u>, ¶¶ 83-85.

The first trial resulted in a $30+ million judgment against Almassud. <u>Id.</u>, ¶¶ 88. AmFam retained appellate counsel who successfully obtained a vacation of the

judgment.  Id., ¶¶ 97-99.  The Court of Appeals remanded the case, requiring AmFam to defend Almassud for a second trial.  Id., ¶¶ 100-104.  The parties settled the Underlying Case during the second trial.  Id., ¶¶ 105.  Based on these acts (and others), AmFam alleges Almassud "breached the duties and conditions set forth in the Policy."  Id., ¶ 144.

**(C)    Almassud Damaged AmFam.**

Almassud's breaches of his duties and conditions of the Policy are not merely academic or theoretical; rather, the breaches are real because AmFam suffered damages as a result.

- Subrogation.  Had Almassud disclosed that Sears inspected the Jeep, AmFam could have pursued subrogation against Sears or its insurer.  Id., ¶ 109(h).

- Settlement.  Had Almassud disclosed the Sears inspection and his off-roading, AmFam could have settled the case pre-suit, saving significant expenses in defense costs and the settlement payment it ultimately made.  Id., ¶¶ 106-107, 109(c), 110-114; Doc 284-10, ¶¶ 7-8.

- Defense costs.  Almassud's failures to cooperate substantially undermined his defense, his counsel's ability to prepare him as a witness, his counsel's development of a defense, his counsel's efforts to prepare an expert witness and his counsel's ability to present Almassud's defenses credibly at trial.

Doc 364, ¶ 110.  His failures to cooperate sabotaged the defense of the second trial by negatively affecting his credibility and allowing evidence in connection with his impeachment from the first trial into the second trial.  Id., ¶ 113.  These factors significantly increased the costs AmFam incurred to defend Almassud.

- Time and effort.  Almassud reported the claim in October 2012, and trial was held in September 2016.  In that four-year process, AmFam investigated a claim, retained an expert, and hired defense counsel who investigated the matter, handled discovery, defended a deposition, prepared for trial, and appeared at trial with a defense of Almassud.  All along the way, Almassud misrepresented and concealed material facts.  When those facts and Almassud's false testimony were exposed at trial, years' worth of work, effort, and expense were rendered useless.

While this Court has ruled that AmFam may only seek nominal damages moving forward, those damages arise from and are informed by the injuries AmFam sustained because of Almassud's breaches.

### III.   ARGUMENT AND CITATION TO AUTHORITY

"A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6)."  King v. Akima Glob. Servs., LLC, 775 F. App'x 617, 620 (11th Cir. 2019).  "Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is

entitled to judgment as a matter of law." Id.  "All facts alleged in the complaint must be viewed in the light most favorable to the nonmoving party." Id.  Judgment should be granted only if "it is clear from the pleadings that the plaintiff is not entitled to relief under any set of facts consistent with the complaint…." Id.

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." Roberts v. JP Morgan Chase Bank, Nat'l Ass'n, 342 Ga. App. 73, 76 (2017).  Further, under Georgia law, "[i]f a plaintiff proves a breach of contract…, the plaintiff may recover nominal damages sufficient to cover the costs of bringing the action." AcryliCon USA, LLC v. Silikal GmbH, 985 F.3d 1350, 1374 (11th Cir. 2021).  "A plaintiff's right to recover nominal damages depends *only* upon whether the defendant's liability has been established." Bishop v. Int'l Paper Co., 174 Ga. App. 863, 864 (1985) (emphasis in original).

Here, AmFam's breach of contract claim meets these elements.  Almassud's Policy imposes "duties" in the event of accident or loss and certain "conditions" by which Almassud must abide.  Doc 1-1, pp. 5, 11.  AmFam alleges that Almassud breached these duties and conditions in the investigation of the claim and defense of the Underlying Case by *inter alia* (i) omitting material information about the Accident and his use of the Jeep in off-roading activities at and prior to the Accident

(see e.g. Doc 364, ¶¶ 47-51, 144(a)); (ii) concealing that Sears inspected his Jeep within hours of the mechanic work performed by Oh's (see e.g. id., ¶¶ 52-61, 109, 144(b)); (iii) providing materially inaccurate responses to written discovery in the Underlying Case (see e.g. id., ¶¶ 73, 144(l)-(m)); (iv) giving intentionally false and misleading testimony at his underlying deposition and trial (see e.g. id., ¶¶ 80-81, 144(g)-(h)); (v) pleading the Fifth Amendment at trial (see e.g. id., ¶¶ 84-87, 144(i)); and (vi) concealing material information and documents from his defense counsel in the Underlying Case (see e.g. id., ¶ 144(o)).  Without question, Almassud's breaches caused AmFam damage.  See id., ¶¶ 145, 151-152.

In moving to dismiss, Almassud erroneously argues that the non-cooperation provisions in the policy are "conditions precedent" that cannot be breached. However, as stated, Almassud's MJP should be denied for at least three reasons: (A) under Georgia law, AmFam's breach of contract claim is viable; (B) Almassud's foreign authority is distinguishable; and (C) authority from other states allowing actions for breach of cooperation provisions are more in line with Georgia law.

**(A)    AmFam's Breach of Contract Claim Is Viable.**

(1)    <u>Under Georgia Supreme Court precedent, AmFam has asserted a "breach of contract" claim for which it is entitled to seek damages.</u>

"Under Georgia law, an insured's failure to cooperate with the insurer in the investigation of a claim, without a valid excuse, may constitute a ***breach of the***

*insurance contract*, precluding any recovery by the insured." Roberts v. State Farm Fire & Cas. Co., 479 F. App'x 223, 226 (11th Cir. 2012) (emphasis added).   In Halcome v. Cincinnati Ins. Co., 254 Ga. 742, 743 (1985), under the policy's "conditions" and "duties after loss," the policy obligated the insureds to provide documents to the insurer and to submit to an examination under oath.   Halcome, 254 Ga. at 743.   The insurer submitted requests for documents, but the insureds failed to provide any material information concerning certain questions.   In light of those facts, the Georgia Supreme Court held "they ***breached the insurance contract***." Id. at 744 (emphasis added).   See also Allstate Ins. Co. v. Hamler, 247 Ga. App. 574, 577 (2001) ("[insured] failed to provide material information relevant to the insurer's investigation of her claim and therefore breached the contract of insurance").

By statute, "[i]n ***every case of breach of contract*** the injured party has a right to damages, but if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action."   O.C.G.A. § 13-6-6.   See also Duke Galish, LLC v. Manton, 308 Ga. App. 316, 322 (2011) ("In every case of breach of contract… the injured party may recover nominal damages"); Dering v. Serv. Experts All. LLC, No. CIVA 106CV-00357-RWS, 2007 WL 4299968, at *10 (N.D. Ga. Dec. 6, 2007) ("nominal damages are available for *any*

breach") (emphasis added).

Here, as noted above, Almassud's Policy imposes cooperation "duties" and "conditions" on him, and AmFam alleges Almassud breached them in the investigation of the claim and defense of the Underlying Case. Thus, under <u>Roberts</u> and <u>Halcome</u>, AmFam has viably pled that Almassud "breached the insurance contract." Under O.C.G.A. § 13-6-6, AmFam is entitled to seek damages for the same, and thus, its breach of contract claim for nominal damages[1] is viable.

    (2)    <u>AmFam pled a breach of "duty," which is sufficient for a claim of nominal damages.</u>

Under Georgia law, "[n]ominal damages are generally defined as a trivial sum awarded where a *breach of duty* or an infraction of the plaintiff's right is shown, but no serious loss is proved." <u>Wright v. Wilcox</u>, 262 Ga. App. 659, 662 (2003). <u>See also Conagra Foods Food Ingredients Co. v. Georgia Farm Servs.</u>, No. 1-09-CV-00167 WLS, 2012 WL 610749, at *3 (M.D. Ga. Feb. 24, 2012) (same). As set forth above, Almassud's Policy establishes certain "duties" in the event of accident or loss. Doc 1-1, p. 5. Likewise, AmFam pled Almassud breached those duties, causing AmFam damages. <u>See</u> Doc 364, ¶ 144 ("Almassud breached the duties…

---

[1] While AmFam's breach of contract claim originally sought to recover damages in the form of defense costs paid by AmFam to defend Almassud and the payment it made to settle the Underlying Case, this Court has ruled those damages were waived. Doc 370, pp. 8-17.

set forth in the Policy by the following conduct or omissions….”); see also id., ¶¶ 140-142, 144-145.  Accordingly, AmFam has pled a viable claim premised upon Almassud's breach of contractual duties owed to AmFam, entitling AmFam to nominal damages.

(3)   AmFam's claim for good faith and fair dealing is viable.

In Georgia, “[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.”  Brack v. Brownlee, 246 Ga. 818, 820 (1980).  See also Stuart Enterprises Int'l, Inc. v. Peykan, Inc., 252 Ga. App. 231, 233 (2001) (“There is also a common law duty to diligently and in good faith seek to comply with all portions of the terms of a contract.”).  “[T]he question of good faith is for the jury.”  Rogers v. Farmers & Merchants Bank, 247 Ga. App. 631, 632 (2001).  See also Cap. Health Mgmt. Grp., Inc. v. Hartley, 301 Ga. App. 812, 817-18 (2009) (“we have held in several cases that” good faith is a jury question).

The Georgia Supreme Court's opinion in Jackson Elec. Membership Corp. v. Ga. Power Co., 257 Ga. 772 (1988) is instructive.  There, Marriott Hotels entered into an agreement with Jackson Electric Membership Corp. (“JEMC”), which, as a condition precedent to performance, required Marriott to apply for membership in JEMC.  257 Ga. at 772-73.  However, Marriott never applied and later executed a contract with Georgia Power.  Id.  JEMC sued Marriott for breach of contract, but

the trial court granted summary judgment to Marriott, finding that because the

condition precedent had not been performed, no contract had formed, and Marriott

could not be held liable.  Id., at 773.  The Georgia Supreme Court reversed, finding:

> Our view of the requirement that Marriott be accepted in the membership of JEMC is that *it was a condition precedent, not to the existence of the contract, but to the existence and enforcement of an immediate right or remedy*. Such conditions are facts and events, which though subsequent to the making of the contract, are nevertheless precedent to the right of immediate performance. See 3A, *Corbin on Contracts,* Sec. 628.

> Here, the contract originally was and primarily is constituted by the parties' exchange of written promises which, notwithstanding the condition of membership, are nonetheless binding. Clearly, the parties intended to enter an agreement: they expressed their mutual intentions to be bound, and a contract was formed. *As a result, the two parties are bound by their mutually interdependent promises*, *including their implied promises that Marriott would apply for membership in the corporation and that JEMC would grant it.*

> "Agreements of this kind serve a vital purpose. They are entered into with the understanding that both parties are firmly committed to the performance of the agreement. In so doing, however, *each promisor has impliedly promised to use his best efforts to bring about the happening of the condition to his promise. His conditional promise is by no means illusory*." Calamari and Perillo, *Contracts* § 71 at p. 139 (1970). See also, Restatement, 2nd, *Contracts* § 231.

Id., at 773-74 (emphasis added).  Accordingly, the court held that "the parties have

an implied duty to exercise good faith in accomplishing the condition precedent"

and the contract did not fail for want of mutuality.  Id., at 774.  See also Brack, 246

Ga. at 819 (where purchase agreement is subject to a contingency, the buyer "has an

implied duty to diligently seek to have (the financing) contingency take place");

Re/Max Executives, Inc. v. Vacalis, 234 Ga. App. 659, 660 (1998) (finding a viable

fair dealing claim because "a jury must determine if the [defendants] acted diligently

in attempting to satisfy their financing obligations under the sales contract"); Feagin

v. Feagin, 174 Ga. App. 474, 475 (1985) ("The appellee should not be allowed to

frustrate performance of the condition precedent").

Indeed, "failure to perform a condition precedent will be deemed as a breach

of contract, where the performance of the condition is *within the control of a party*

*to the agreement*, for that party then promises or undertakes that the condition will

occur and must use 'reasonable efforts' to bring the event to pass." 23 Williston on

Contracts § 63:6 ("Requirement that conditions be fulfilled") (4th ed. 2020)

(emphasis added). As a result, a party can seek nominal damages for a good faith

and fair dealing claim. See Raiford v. Nat'l Hills Exch., LLC, No. CV 111-152,

2013 WL 1286204, at *26 (S.D. Ga. Mar. 27, 2013) ("Having already determined

that a jury could reasonably conclude that Defendants breached the implied covenant

of good faith and fair dealing, the question of nominal damages shall also proceed

to trial").

Here, just as in Jackson Elec., to the extent the cooperation provisions are

solely conditions precedent, which AmFam denies, AmFam has still pled a viable

claim for breach of the implied covenant of good faith and fair dealing.  See Doc 364, ¶ 145.  As in Jackson, the cooperation provisions were not conditions precedent to the existence of the insurance contract; they were conditions precedent to the existence and enforcement of immediate rights or remedies available in the Policy. To be sure, the Policy had been in effect and binding on the parties for *years* before AmFam discovered Almassud's breaches. Almassud had paid premiums, and AmFam had provided him insurance, investigated his claim, made payment on his property damage claim, and provided him a defense of the Underlying Case.  When the time came for Almassud to perform his cooperation duties during the investigation and defense, those duties were entirely within his control.  He elected to conceal information, testify untruthfully, plead the Fifth Amendment, and so on. His breaches damaged AmFam, precluding subrogation from Sears, preventing AmFam's proper evaluation of the claim pre-suit and offers to settle at that time, increasing the cost of its defense and settlement, and more.  Thus, just as the Georgia Supreme Court found Marriott was "bound by… [its] implied promises that [it] would apply for membership in the corporation," Almassud is bound by his implied promise to cooperate with AmFam.   Jackson Elec., 257 Ga. at 773-74.  See also Brack, 246 Ga. at 819. While Almassud purports to rely on the "most reasonable authority available" (Doc 374, p. 7), under available Georgia law, AmFam's claim

is viable.  Thus, the MJP must be denied.

**(B)    Almassud's Foreign Authority Is Distinguishable.**

Citing exclusively to limited foreign authority, Almassud argues that breach of a cooperation provision is not actionable.  Almassud's cases are inapposite.

In Philadelphia Indem. Ins. Co. v. Stebbins Five Companies, Ltd., No. 3:02-CV-1279-M, 2002 WL 31875596 (N.D. Tex. Dec. 20, 2002), the court determined that an insurer could not bring a breach of contract claim against its insured. This case is distinguishable for at least four reasons:

- First, in Stebbins, the court found a key fact was the policy "lists the cooperation clause in a section entitled 'Commercial General Liability Conditions.'" 2002 WL 31875596, at *6.  Here, the Policy has *two separate* cooperation provisions.  Although one is a condition, the other imposes certain "duties" on Almassud.  See Doc 1-1, p. 5.

- Second, Georgia breach of contract law is markedly different from Texas law on this issue.  The Georgia Supreme Court has held that breach of a cooperation provision is a "breach [of] the insurance contract" and, by statute, Georgia law entitles AmFam to seek damages, especially nominal damages, for "every" such breach.  Halcome, 254 Ga. at 744; O.C.G.A. § 13-6-6.  The court in Stebbins discusses no similar authority.  Stebbins, 2002 WL 31875596, at *5-6.

•  Third, the logic of <u>Stebbins</u> and its progeny is simply inapplicable.  The courts note that "cooperation clauses [are] conditions precedent, *relieving an insurer of liability* rather than creating an affirmative cause of action."  <u>Stebbins</u>, 2002 WL 31875596, at *6.  This theme – that AmFam should simply have sought a declaration that it was relieved from liability – is present throughout Almassud's brief, as well.  However, AmFam had no opportunity for such relief.  Despite seeking a prompt declaratory judgment on the duty to defend, this Court ordered AmFam to defend Almassud in the Underlying Case.  Doc 302, pp. 25-26.  AmFam incurred significant costs in doing so, made far worse by Almassud's non-cooperation.  Doc 364, ¶ 106.  Circularly, Almassud now argues AmFam's sole remedy was to seek a declaration that it had no such duty, which it did, was ordered to provide, and it provided.  AmFam will have had no opportunity to make a claim that Almassud breached his contractual duty to cooperate if the MJP is granted, the unjustness of which is underscored by Almassud's egregious breaches and this Court's reconsideration of AmFam's duty to defend.  <u>See</u> Doc 370, p. 8 ("Accordingly, the part of the Court's prior Order [Dkt. 302] which ruled that AmFam had a duty to defend Mr. Almassud is hereby VACATED."); <u>id.</u>, p. 17 ("the Court holds that AmFam can seek nominal damages under its breach of contract claim.").

•  Fourth, the <u>Stebbins</u> court found that "the only applicable case law

treats cooperation clauses as conditions precedent, relieving an insurer of liability *rather than creating an affirmative cause of action* against its insured." Stebbins, 2002 WL 31875596, at *6 (emphasis added).  In Georgia, this is not so.  Jackson Elec. and Brack confirm that under Georgia law, unlike in Texas, a contracting party makes an "implied promise" to fulfill conditions precedent, particularly when the condition is solely within the control of that party.   An insurance policy's cooperation clause, if only a condition precedent, is analogous to an implied promise by the insured to cooperate with the insurer in the defense of a lawsuit filed against him.  Indeed, that promise could be broken at any time during the provided defense. Put another way, once an insurer has provided a defense, the insured controls his own cooperation with that defense.  The insured's fulfillment of his promise in that regard is not onerous. At bare minimum, he need only be and remain truthful—a promise Almassud failed to fulfill when AmFam was defending him in the Underlying Case.

Evanston Ins. Co. v. Tonmar, L.P., 669 F. Supp. 2d 725, 732 (N.D. Tex. 2009), Koken v. Auburn Mfg., Inc., No. CIV. 02-83-B-C, 2004 WL 51100, at *4 (D. Me. Jan. 8, 2004), and Beaufort Dedicated No. 5, Ltd. v. USA Daily Exp., Inc., No. CIV.A. H-12-1923, 2012 WL 6608869, at *1 (S.D. Tex. Dec. 18, 2012) rely on Stebbins and are distinguishable for the same reasons.

Beaufort is distinguishable for a further reason: it is a first party property insurance case, not third-party liability coverage dispute such as here.  Beaufort, 2012 WL 6608869, at *1.  In a first party case, unlike here, the dispute concerns whether and how much insurer pays out policy proceeds once the insured has proven his claim.  If the insured fails to cooperate, *i.e.*, provide sufficient and/or accurate sworn proofs of loss, the insurer may not (fully) reimburse the claim.  By contrast, here, Almassud's breaches of the cooperation provision materially affected AmFam in its defense of a third-party claim filed by Cruz against Almassud.  It was not as if Almassud's failure to cooperate resulted in diminished claim proceeds for Almassud.  Quite the opposite.  AmFam had provided Almassud a defense, incurred significant defense costs, paid an underlying settlement, and lost opportunities for subrogation.  Accordingly, Beaufort is inapposite.

**(C)    Authority From Other States Allowing Actions For Breach Of Cooperation Provisions Is More On Point.**

Other jurisdictions allow independent claims for breach of cooperation provisions.  See Landmark Am. Ins. Co. v. Taisei Constr. Corp., No. CV 16-9169-R, 2017 WL 5640559, at *2 (C.D. Cal. Aug. 14, 2017) ("Plaintiff has a right to assert an independent claim for breach of a cooperation clause under California law"); Travelers Indem. Co. of Ct. v. Centex Homes, No. EDCV 14-0906 JGB SPX, 2014 WL 8864520, at *10 (C.D. Cal. Oct. 2, 2014) ("The Court follows the example of

those district courts and holds that an insured's breach of a duty to cooperate can form the basis for an independent cause of action by an insurer."); Empire Fire & Marine Ins. Co. v. Estrella, 2019 WL 6390193, at *5 (E.D.N.Y. Sept. 13, 2019), report and recommendation adopted, 2019 WL 4744208 (E.D.N.Y. Sept. 30, 2019) (noting that where "[insurer] alleges that [insured] is liable for breach of contract by failing to abide by the Policy's cooperation provisions" remedies include a "claim of breach of contract" for "damages" or the insurer may disclaim liability); Toussie v. Allstate Ins. Co., No. 15 CV 5235 (ARR), 2019 WL 2435852, at *10 (E.D.N.Y. Feb. 6, 2019), report and recommendation adopted, No. 1:15-CV-5235, 2019 WL 2082462 (E.D.N.Y. May 13, 2019) (insurer's counterclaim for failure to cooperate seeking nominal damages and declaratory relief is viable).

Other courts have rejected Almassud's argument that non-cooperation is solely a defense based on the condition precedent.  See Navigators Specialty Ins. Co. v. Pro. Builders, Inc., No. B287959, 2019 WL 140032, at *6 (Cal. Ct. App. Jan. 9, 2019) ("[insured] claims that [insurer's] cause of action for breach of contract is legally insufficient because breach of the cooperation clause… creates only a defense, not an affirmative cause of action. We disagree."); Kransco v. Am. Empire Surplus Lines Ins. Co., 23 Cal. 4th 390, 410, 2 P.3d 1, 15 (2000), as modified (July 26, 2000) ("We again emphasize that… breach of [an insured's] express obligations

under the terms of the insurance policy (i.e., breach of the cooperation clause) may

support a number of contract defenses to a bad faith action… *or forming the basis*

*for a separate contract claim*") (emphasis added).

The case of Fremantlemedia N. Am., Inc. v. AXA Ins. Co., No. CV1003459-

RGKFMOX, 2010 WL 11601221 (C.D. Cal. Oct. 15, 2010) is instructive.  There,

the insured and a co-defendant were sued for copyright infringement, and the insurer

paid the full value of the insured's portion of the settlement.  2010 WL 11601221,

at *2.   However, among other issues, the insured failed to disclose it had an

indemnification agreement with the co-defendant.  Id., at *3.

> The [insurer's counterclaim]… alleges that the agreement contained a
> cooperation clause, obligating [insured] to "in all respects cooperate
> with respect to any claim for which insurance is afforded under this
> policy." The [insurer's counterclaim] asserts that [insured] breached
> this duty by failing to disclose the Indemnity Agreement with [co-
> defendant], specifically its settlement split term. Finally, the [insurer]
> pleads that but for this breach, it would have demanded that [co-
> defendant] pay half of the settlement costs. Thus it alleges as damages
> the difference between the contribution that it agreed to make toward
> the settlement, and the amount it would have agreed to had [co-
> defendant] paid half of the settlement. Together, *these allegations meet*
> *the standard for pleading an action for breach of contract.*

Id. (emphasis added).

The holding in Fremantlemedia is more in line with Georgia law on good faith

and fair dealing than the Texas cases Almassud cites because it assumes that the

cooperation provision carries a duty on the part of the insured – which it does.  Id.

("The term 'cooperate' could be understood to include an affirmative duty to disclose all information known to be relevant"). The decision is also more factually on-point. In <u>Fremantlemedia</u>, the insured received a defense, the insurer paid a settlement, and the insured's deceit and non-cooperation caused the insurer to incur damages.

Similarly, Almassud received a defense, AmFam paid to settle claims against him, but his material omissions, concealment of his off-roading and false testimony setting the stage for his trial impeachment destroyed his defense in the Underlying Case and foreclosed opportunities for AmFam to settle this case pre-suit and to seek subrogation. Accordingly, AmFam should similarly be allowed, at minimum, to seek nominal damages for its claim.

## IV.   THE PLEADINGS ARE NOT CLOSED

"By the plain language of Rule 12(c), a party may not move for judgment on the pleadings until 'after the pleadings are closed.'" <u>Lillian B. ex rel. Brown v. Gwinnett Cty. Sch. Dist.</u>, 631 F. App'x 851, 852-53 (11th Cir. 2015). <u>See also</u> <u>id.</u>, at 853 ("the district court's inherent authority does not authorize it to disregard express limitations or conditions contained in the Federal Rules of Civil Procedure."). The pleadings are not closed with respect to a party's complaint where "[defendant] had filed a counterclaim and [plaintiff] had not filed an answer to the

counterclaim."  <u>Perez v. Wells Fargo N.A.</u>, 774 F.3d 1329, 1339 (11th Cir. 2014).

<u>See also</u> <u>Abedi v. US Bank Nat'l Ass'n</u>, 2017 WL 2306413, at *2 (N.D. Ga. Jan. 18,

2017), <u>report and recommendation adopted,</u> 2017 WL 2728612 (N.D. Ga. Feb. 8,

2017) ("when it comes to determining whether pleadings are closed, a counterclaim

counts, too.").

Here, the pleadings are not closed.  Almassud has a pending motion to

reinstate a failure to settle counterclaim.  <u>See</u> Doc 371.  If the Court grants that

motion, AmFam will have an opportunity to answer the counterclaim.  Thus, the

pleadings are open, and for this procedural reason, the MJP cannot be granted.

## V.    CONCLUSION

WHEREFORE, AmFam respectfully requests that this Court DENY

Almassud's MJP.

This 26th day of March, 2021.

MORRIS, MANNING & MARTIN, LLP

<u>/s/ Seslee S. Smith</u>
Seslee S. Smith
Georgia Bar No. 663377
Jessica F. Pardi
Georgia Bar No. 561204
Ryan C. Burke
Georgia Bar No. 336130
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.

Atlanta, GA 30326
Tel: (404) 233-7000
Fax: (404) 365-9532

**PRETZEL & STOUFFER**

Edward B. Ruff, III, Esq.
*Admitted Pro Hac Vice*
Robert Marc Chemers, Esq.
*Admitted Pro Hac Vice*
Michael P. Turiello, Esq.
*Admitted Pro Hac Vice*
Pretzel & Stouffer, Chartered
One South Wacker Drive
Suite 2500
Chicago, Illinois 60606
(312) 578-7814

*Attorneys for Plaintiff American Family*
*Insurance Company*

## **L.R. 5.1(C) CERTIFICATE OF COMPLIANCE**

Per L.R. 7.1(D), I certify that this pleading was prepared per L.R. 5.1(C) in

Times New Roman, 14 point type face.

*/s/ Seslee S. Smith*
Seslee S. Smith
Georgia Bar No. 663377

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** with the Clerk of Court by using the CM/ECF system which will automatically send e-mail notification of such filing to:

> James N. Sadd
> Richard English Dolder, Jr.
> Slappey & Sadd
> 352 Sandy Springs Circle
> Atlanta, GA 30328
> 404-255-6677
> jay@lawyersatlanta.com
> rich@lawyersatlanta.com
>
> *Attorneys for Defendant Almassud*

This 26th day of March, 2021.

> */s/ Seslee S. Smith*
> Seslee S. Smith
> Georgia Bar No. 663377

14181605 v4