# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| AMERICAN FAMILY INSURANCE COMPANY, | |
| Plaintiff, | Civil Action No. |
| v. | 1:16-CV-4023-RWS |
| ABDULMOHSEN ALMASSUD | |
| Defendant. | |

## ORDER

This case comes before the Court on Defendant Abdulmohsen Almassud's Motion to Reinstate a Claim [Dkt. 371] and Motion for Judgment on the Pleadings [Dkt. 374]. Having reviewed the record, the Court enters the following Order.

## BACKGROUND

This is the third in a series of Orders that serve to reset and refine the pleadings of this insurance coverage dispute after the insurer, Plaintiff American Family Insurance Company, settled the underlying claim brought against its insured, Defendant Abdulmohsen Almassud.

In the first Order [Dkt. 363], the Court held that the settlement payment mooted AmFam's claim for declaratory judgment, but it allowed AmFam to amend

its Complaint to add claims for rescission and breach of contract. AmFam did so, and then Mr. Almassud filed a Motion to Dismiss.

In the second Order [Dkt. 370], the Court dismissed most of AmFam's claims, but allowed AmFam to proceed on its breach of contract claim to seek nominal damages for Mr. Almassud's alleged non-cooperation.

Now, Mr. Almassud wants two additional changes: first, he seeks to reinstate his own counterclaim for AmFam's alleged bad-faith failure to settle the underlying case—a claim which this Court had previously dismissed without prejudice as being unripe; second, he moves for judgment on the pleadings on AmFam's remaining breach of cooperation claim.

Because the pertinent allegations and other aspects of the case history are outlined elsewhere, the Court proceeds directly to the discussion of these Motions.

## DISCUSSION

### I.  Motion to Reinstate Counterclaim [Dkt. 371]

Mr. Almassud brought his failure-to-settle counterclaim in his Amended Answer. [Dkt. 26]. Thereafter, the Court dismissed the claim without prejudice because it was unripe while the underlying case was still pending. [Dkt. 53]. Now that the underlying case has settled, even though he was not subject to an excess judgment, Mr. Almassud seeks to reinstate the counterclaim.

## A.   Legal Standard

When a motion to amend is filed after the deadline from a scheduling order, the movant is required to demonstrate good cause under Federal Rule of Civil Procedure 16(b) before the Court may consider the amendment under Rule 15. Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998). See also Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). The good cause standard "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." Sosa, 133 F.3d at 1419.

Once a court determines that good cause has been shown, only then may it look to Rule 15, which provides that, "a party may amend its pleading only with the opposing party's written consent or the court's leave." But when a party seeks the court's leave, the "court should freely give leave when justice so requires." Id. A court should deny leave under Rule 15 only "where there is substantial ground for doing so, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Reese v. Herbert, 527 F.3d 1253, 1263 (11th Cir. 2008). Ultimately, however, the decision of whether to grant leave to amend

remains in the court's discretion. S. Grouts & Mortars. Inc. v. 3M Co., 575 F.3d 1235, 1240 (11th Cir. 2009).

### B.  Analysis

As an initial matter, the Court finds that Mr. Almassud has been sufficiently diligent to satisfy the good cause standard under Rule 16(b). As he notes, the Court indicated in the first of these three Orders [Dkt. 363] that reinstating this claim might be warranted depending on the Court's ruling on the Motion to Dismiss. So, Mr. Almassud was entitled to wait until after the Court's second ruling [Dkt. 370] before determining whether this amendment was warranted.[1] Moreover, two recent Eleventh Circuit cases that address the viability of this claim mean that new law bearing on the question has arisen in the time since the claim was dismissed. As such, Mr. Almassud has good cause for the motion.

The more significant question concerns futility—in particular, whether a failure-to-settle claim brought under Georgia law can proceed under the circumstances of this case. AmFam argues that the claim is futile for two related (though technically separate) reasons: first, because under Georgia law, an excess

---

[1] To be sure, the Court had originally contemplated that Mr. Almassud would seek to reinstate the claim only if the Court had allowed AmFam to recover the settlement amount, which the Court did not. But that does not render the Motion procedurally improper—it simply begs the question of futility.

judgment is a necessary prerequisite to the claim; or second, because a no-action provision in the policy requires that there be a judgment or a written agreement between all parties before AmFam can be sued under the policy.

As for a freestanding requirement under Georgia law, though Georgia courts do not seem to have directly answered the question, the Eleventh Circuit recently concluded that "Georgia law does not require an excess judgment." Am. Guarantee & Liab. Ins. Co. v. Liberty Surplus Ins. Corp., 835 F. App'x 447, 459 (11th Cir. 2020).[2] This Court agrees that an excess judgment is not an *inherent* prerequisite for such a claim.[3]

But that does not end the inquiry. The Court must still look to the policy itself, because "an insurance policy, as a contract, may cabin the insurer's liability in tort." Game Truck Georgia, LLC v. Atl. Specialty Ins. Co., 2021 WL 868506, at *3 (11th Cir. Mar. 9, 2021) (citing Trinity Outdoor, LLC v. Central Mutual Insurance Co., 679 S.E.2d 10, 13 (Ga. 2009)). In Game Truck, the court noted that

---

[2] Both Eleventh Circuit cases discussed here (American Guarantee and Game Truck) are unpublished opinions, which do not bind this Court. Nevertheless, in the absence of any indication to the contrary, the Court finds both cases persuasive.

[3] In a prior Order, which was issued before Game Truck, this Court cited Trinity Outdoor, LLC v. Central Mutual Insurance Co., 679 S.E.2d 10, 13 (Ga. 2009), as holding that "a judgment in excess of the policy limits must be entered before an action for negligent or bad-faith failure to settle can be asserted." [Dkt. 53 at 7]. That is a simplified explanation of a more nuanced rule. Trinity Outdoor, as the following discussion makes clear, depended on the language of the contract at issue there.

a "no-action" provision—i.e., a provision stating that the insurer could not be sued until there was a final judgment or settlement—contained in the policy meant that "an agreed-upon settlement or final judgment was a condition precedent to bringing this action." Id. at *4. Because the appeal of the underlying case was still pending, the provision was unmet, so the failure-to-settle claim could not proceed.

Here, the circumstances are a bit different. There is a similar no-action provision, but the underlying case has reached final settlement. Mr. Almassud argues that the differing circumstances mean that the provision has been satisfied. AmFam, on the other hand, argues that, despite the settlement, the specific terms of the provision remain unmet. Though Mr. Almassud's position does have some merit, see Game Truck, 2021 WL 868506, at *4, n.4 (citing Am. Guarantee, 835 F. App'x at 454) ("But even if such clauses existed [in American Guarantee], they would not have barred the suit because the parties reached an agreed-upon settlement in the underlying litigation."), the Court ultimately agrees with AmFam.

Critically, the no-action provision here requires a *written* agreement between all three parties. In the policy, the pertinent provision states that "We may not be sued under the liability coverage until the obligation of a person we insure to pay is finally determined . . . *by written agreement of that person, the claimant, and us*." [Dkt. 1-1 (emphasis added)]. But there is no written agreement here involving Mr.

Almassud. It is undisputed that Mr. Almassud did not sign the settlement agreement, and by the plain terms of the release, he did not consent to it either.[4]

Mr. Almassud argues that the Court should construe the provision language liberally, and that his verbal agreement to the settlement means that the no-action provision was substantially complied with. But the Court disagrees.

First, a review of the cases cited above favors a stricter interpretation of the agreement. Although the Eleventh Circuit in Game Truck posited that the provision in American Guarantee "would not have barred the suit because the parties reached an agreed-upon settlement in the underlying litigation," that was mere conjecture. 2021 WL 868506, at *4, n.4 (citing Am. Guarantee, 835 F. App'x at 454). By contrast, in Trinity Outdoor, the Supreme Court of Georgia looked carefully at the provision's language and compared it against what had happened. 679 S.E.2d at 12. Because the nature of the insured's settlement payment failed to meet the requirements of the no-action clause, the insured could not recover. To be sure, none of Game Truck, American Guarantee, or Trinity Outdoor fit the precise

---

[4] Mr. Almassud argues that the statement that the agreement was made "without the consent of" Mr. Almassud is simply false. But that does not change what the release says, nor do AmFam's prior statements bind it to a position that this is a written agreement between all three parties that satisfies the policy's no-action provision. AmFam's prior statements are in keeping with the part of the release which states: "The case has been resolved to the satisfaction of all parties." And even if that statement seems ambiguous in light of the other, still that ambiguity does not change the result.

circumstances here. But it seems clear that a careful reading and application of the no-action requirement is warranted.

Next, the case Mr. Almassud relies on makes clear that the Court construes policy language liberally in favor of the insured when it is ambiguous. See Am. Strategic Ins. Corp. v. Helm, 759 S.E.2d 563, 567 (Ga. Ct. App. 2014). But that is not the case here. Here, the language in the policy provision unambiguously requires a written agreement between the three parties. There is no room to extend that requirement to encompass verbal agreements.

Finally, the requirement of a written agreement between all three parties is not unreasonable given the nature of the recovery sought. The primary harm that a failure-to-settle claim seeks to remedy is the insured's liability due to an excess judgment or a settlement which he must pay. Neither occurred here; Mr. Almassud paid no judgment or settlement. If he had been required to pay some of the settlement amount, presumably he would have been included in the agreement, and thus the no-action provision would be satisfied. As it stands, because he did not have to pay, his only potential damages are consequential. And while those may be valid damages, cf. Game Truck, 2021 WL 868506, at *3 (consequential injuries sufficient to confer standing to bring failure-to-settle claim), he has other existing claims that allow him to seek recovery for those alleged losses.

8

Accordingly, the Court finds that, under the circumstances presented here, Mr. Almassud cannot maintain his failure-to-settle counterclaim. As such, his Motion to Reinstate the Claim [Dkt. 371] is **DENIED**.

## II. Motion for Judgment on the Pleadings [Dkt. 374]

In its prior Order, ruling on a Motion to Dismiss, the Court held that AmFam could proceed on its breach of contract claim and seek nominal damages. This time around, Mr. Almassud wants that claim thrown out, but for a different reason.

### A. Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." When the challenge is based on a failure to state a claim, a motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6). Carbone v. Cable News Network, 910 F.3d 1345, 1350 (11th Cir. 2018). Therefore, judgment on the pleadings is appropriate "where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Perez v. Wells Fargo N.A., 775 F.3d 1329, 1335 (11th Cir. 2014). In determining whether a party is entitled to judgment, the Court accepts as true all material facts alleged in the non-moving party's pleading and views those facts in the light most favorable to the non-moving party. Id.

9

**B.  Analysis**

In his Motion for Judgment on the Pleadings, Mr. Almassud seeks the Court's judgment on AmFam's remaining claim for breach of contract stemming from Mr. Almassud's alleged non-cooperation. He contends that a breach of the non-cooperation provision does not give rise to an action for damages, and so AmFam should not be able to proceed on its claim.

No Georgia court appears to have taken the position he suggests, but Mr. Almassud endeavors to get around that absence with a rather clever syllogism: relying first on precedent from Texas, he claims that if the noncooperation clause is treated as a condition precedent (as opposed to a duty), the alleged breach of that clause would not give rise to an action for breach of the contract itself. See, e.g., Beaufort Dedicated No. 5, Ltd. v. USA Daily Exp., Inc., 2012 WL 6608869, at *8 (S.D. Tex. Dec. 18, 2012) ("[U]nder Texas law such cooperation clauses are treated as conditions precedent, relieving an insurer of liability rather than creating an affirmative cause of action against the insured.") Then, to bring the argument home, he claims that under Georgia law, a non-cooperation clause is treated as a condition precedent. Thus, his conclusion: Georgia courts would not countenance an affirmative claim for breach of contract simply because the insured breached the non-cooperation provision—the only available remedy would be coverage denial.

10

The problem with that argument is that Georgia courts do appear to have countenanced breach of contract claims under similar circumstances. E.g., Halcome v. Cincinnati Ins. Co., 334 S.E.2d 155, 157 (Ga. 1985); Allstate Ins. Co. v. Hamler, 545 S.E.2d 12, 14 (Ga. Ct. App. 2001); see also Roberts v. State Farm Fire & Cas. Co., 479 F. App'x 223, 226 (11th Cir. 2012) ("Under Georgia law, an insured's failure to cooperate with the insurer in the investigation of a claim, without a valid excuse, may constitute a breach of the insurance contract, precluding any recovery by the insured.") Whatever the merit of Mr. Almassud's approach, this Court declines to apply the law of Texas instead of Georgia's.

In his Reply,  Mr. Almassud shifts his focus to the language of the provision: even if cooperation is a duty and Georgia law allows for breach of contract claims, he argues, still in this policy, AmFam has limited its own remedy to a denial of coverage. But in this instance, the Court does not read the policy so restrictively. It may be that his breach of cooperation relieved AmFam of its duty to defend or indemnify (the basis for the prior declaratory judgment claim), but, unlike above, the policy does not purport to prevent AmFam from pursuing an otherwise valid legal remedy. [5]

---

[5] Because the claim for breach of the non-cooperation provision remains viable, the Court need not address the arguments concerning the timing of the pleadings or AmFam's supposed claim for the breach of duty of good faith and fair dealing. As for the latter,

Accordingly, because AmFam has properly stated a claim for breach of the non-cooperation provision, Mr. Almassud's Motion for Judgment on the Pleadings [Dkt. 374] is **DENIED**.

## CONCLUSION

For the foregoing reasons, Defendant Abdulmohsen Almassud's Motion to Reinstate a Claim [Dkt. 371] and Motion for Judgment on the Pleadings [Dkt. 374] are both **DENIED**. The pleadings are now closed, and no further amendments will be allowed by the Court. The parties are **ORDERED** to **MEET AND CONFER** concerning the schedule for this case and to **FILE** an Amended Scheduling Order **WITHIN 14 DAYS** of this Order.

**SO ORDERED** this 17th day of May, 2021.

_____
**RICHARD W. STORY**
United States District Judge

---

however, the Court notes that it agrees with Mr. Almassud that no such claim exists in the Complaint and cautions AmFam not to attempt to advance claims that are not already included in the Complaint.