IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AMERICAN FAMILY INSURANCE COMPANY, <br><br>　　　Plaintiff, <br><br>v. <br><br>ABDULMOHSEN ALMASSUD, <br><br>　　　Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION <br> ) FILE NO. 1:16-cv-04023-RWS <br> ) <br> ) <br> ) <br> ) |

**REPLY BRIEF IN SUPPORT OF ALMASSUD'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
REGARDING NO BREACH OF THE COOPERATION CLAUSE**

Abdulmohsen Almassud ("MJ") respectfully submits this reply brief in further support of his Motion for Partial Summary Judgment Regarding No Breach of the Cooperation Clause. (Doc 395) This Court should grant the motion.

**A.   MJ moved for "partial" summary judgment on discrete issues, which AmFam conflates in order to distract.**

MJ's motion addresses two discrete issues that are worth repeating. MJ moved for *partial* summary judgment only as follows:

- Prior to the Underlying Lawsuit, MJ fully cooperated with AmFam and did not breach the cooperation clause as a matter of law.

- At no time did AmFam make any request of MJ that would have required him to provide the Sears document to AmFam, so there is no breach of the cooperation clause with respect to the Sears document as a matter of law.

In its response, American Family Insurance Company ("AmFam") goes into other of its allegations that occurred well after the pre-suit investigation and that have nothing to do with the Sears document. AmFam wants this Court to view its allegations against MJ as one, huge, amalgamated breach. But Georgia law does not recognize the concept of one, huge, amalgamated breach of the cooperation clause. Rather, such a breach requires specific requests and specific failures.[1] Indeed, in its own complaint, AmFam alleges multiple, specific breaches. (E.g., Doc 363, ¶144)  MJ may file motions directed to those specific allegations.

To avoid the analysis necessary and appropriate for *partial* summary judgment, AmFam goes beyond the specific allegations that are the subject of the instant motion. However, MJ did not move for summary judgment with regard to

---

[1] Breach of the cooperation clause requires "[t]he voluntary and unexcused failure of an insured" to do something her insurer requests "after notice or request to do so." *H.Y. Akers & Sons v. St. Louis Fire & Marine*, 120 Ga. App. 800, 803 (1969) (failure to attend trial). The Supreme Court of Georgia has noted that proof of the failure to cooperate requires evidence regarding the insurer's efforts to secure cooperation and the insured's failure, adding that the Court "would expect the insurer to maintain documentation to substantiate its non-cooperation defense." *Travelers v. Castellanos*, 297 Ga. 174, 178 (2015). *See also*, *Vaughan v. ACCC*, 314 Ga. App. 741, 743-44 (2012) (detailing specific requests and specific failures).

his testimony in the Underlying Lawsuit, either in deposition or at trial. MJ understands this Court has indicated it sees disputed issues of material fact as to that testimony, and he looks forward to showing at trial that his testimony satisfied the duty to cooperate in light of his memory and understanding of the questions asked. Because he did not move on those specific allegations, however, they are irrelevant to his motion for partial summary judgment.

AmFam further argues this Court may not grant partial summary judgment, because breach of the cooperation clause is not conducive to summary judgment. Precedent is to the contrary: "Whether there has been a breach of the co-operation clause is sometimes a question of fact … and at others a question of law." *H.Y. Akers*, 120 Ga. App. at 802. "The Court may decide the issue of cooperation as a matter of law on summary judgment." *SavaSeniorCare v. Starr*, 2021 WL 4429088, at *13 (N.D. Ga.).

Accordingly, based on Georgia law and AmFam's decision to present its claim as separate and distinct allegations of breach, this is a perfect case for *partial* summary judgment on a few of AmFam's specific allegations of breach. MJ respectfully requests that this Court analyze the motion in light of controlling law and in light of AmFam's Second Amended Complaint and grant his motion.

### B.  AmFam seeks to avoid its burden of showing all elements of its case by confusing remedy for a breach with whether there was a breach in the first instance.

With breathtaking sophistry, AmFam argues it need not show all elements of breach of the cooperation clause because it is seeking nominal damages and is no longer seeking to deny coverage.[2]  (Doc 404, p.11)  To reach its erroneous conclusion, AmFam cites generic elements for breach of contract, *i.e.*, (1) breach, (2) damages (3) a party with a right to complain.  (Doc 404, p.11)  Because these three elements are all that are required, AmFam reasons, this Court may ignore the abundant Georgia law specifying the elements for the specific type of breach at issue, and AmFam must merely show "breach."  AmFam's argument begs the question, "Breach of what?"

AmFam alleges breach of a specific type of clause in a unique type of contract:  Breach of the cooperation clause in an insurance policy.  As set forth in MJ's primary brief, Georgia law clearly puts the burden on the insurance company to show certain elements to prove such a breach.  AmFam cites no law for the proposition that the elements of proving breach of the cooperation clause change simply because the insurer is seeking nominal damages.  AmFam cites no law for

---

[2] AmFam is not seeking to deny coverage because this Court ruled the issue moot.

4

the proposition that the elements of proving breach of the cooperation clause change for any reason under any circumstances.

By arguing that MJ did not move for summary judgment on damages, AmFam confuses whether there is a breach with the remedy for that breach. In this case, as well as all other contract cases, one first determines whether there is a breach and then considers the potential remedy for that breach. This Court has already decided AmFam's remedy is limited to nominal damages, and MJ's motion has nothing to do with AmFam's remedy. The instant motion addresses only whether AmFam can fulfill its burden with respect to two subsets (its pre-suit investigation and the Sears document) of the many breaches AmFam alleged.

AmFam's purpose in confusing breach and remedy is to avoid its burden to show all elements of its allegation that MJ breached the cooperation clause of an insurance policy. This Court should ignore AmFam's argument that its available remedy for a breach changes what it must prove to show that breach. Instead, this Court should follow Georgia law, which requires AmFam to show (a) it reasonably requested cooperation, (b) MJ "willfully and intentionally" failed to cooperate, and (c) the failure to cooperate prejudiced the defense. *Castellanos*, 297 Ga. at 177.

### C. MJ did not breach the cooperation clause prior to the Underlying Lawsuit as a matter of law.

#### 1. The cooperation clause does not require insureds to determine what information claim professionals and insurance attorneys need to analyze a claim.

AmFam argues MJ breached the cooperation clause during AmFam's pre-suit investigation because "any reasonable person would have disclosed the material issues … ." (Doc 404, p.2)  This argument begs the questions, "What is a material issue?" and "Whose job is it to determine what is material during the adjustment of a liability claim that might result in litigation?"

The elements of breach of the cooperation clause do not include an analysis of what a reasonable insured (whatever that is) would have considered "material issues" to disclose.  Instead, the law focuses on whether the insurance company diligently sought the information it thinks it needs and whether the insured willfully failed to provide it.  *See*, *Castellanos*.  Breach of the cooperation clause does not depend on the insured failing to understand the adjuster's subjective understanding of her questions, which is why "[w]ilfulness and fraud are essential ingredients to substantiate the defense of failure to co-operate." *State Farm v. Wendler*, 117 Ga. App. 227, 231 (1968).  No terms in the insurance policy suggest that policyholders are required to know so much or go so far.

6

For example, AmFam argues that when it asked about the "purpose" of his drive, MJ should have divined that AmFam was trying to learn about his activities and not his destination.  Ironically, AmFam's statement of its subjective intent in asking the "purpose" question shows there are no disputed facts for a jury to resolve.  If AmFam truly wanted to learn about MJ's activities and not about his destination when it asked about MJ's "purpose" – which is what AmFam now asserts – when AmFam received an answer about destination, it was up to AmFam to use diligence to follow up.  AmFam's argument is effectively an admission that as soon as it heard MJ's answer, it thought the answer was not responsive. AmFam cannot fulfill its burden to show diligence as a matter of law.

Furthermore, no reasonable juror could find that a destination is not at least one purpose of getting into a car and driving.  To place in context AmFam's assassination metaphor, if an adjuster asked an insured the purpose of a trip, and the insured replied that the purpose was to go to the beach, it is a breach of the cooperation clause if the insured took a swim while at the beach.  MJ's answer was truthful and responsive, and AmFam cannot fulfill its burden to show "[w]ilfulness and fraud" as to the recorded statement.  *Wendler*.

The insurance company is the expert at handling claims.  In this case, AmFam had experienced claim professionals and inhouse attorneys working on the

claim and deciding what to ask of MJ.  AmFam cites no law stating that an insured breaches the cooperation clause by failing to determine "material issues" for a particular claim.  AmFam cites no law stating an insured must understand tort and subrogation principles so as to anticipate what an insurance company needs to know to investigate and analyze a liability claim.

AmFam's allegations that MJ should have mentioned off roading when Lyke asked him if he had anything to add is tantamount to requiring lay insureds to play the role of claim professional and inhouse attorney.  If that were the case, why require the insurance company to ask any questions at all?  AmFam cannot fulfill its burden to show a lack of cooperation during pre-suit claims handling.

> 2. Allegations of breaches during the Underlying Lawsuit are irrelevant to alleged breaches prior to the litigation.

AmFam argues MJ breached the cooperation clause during AmFam's pre-suit investigation because "any reasonable person would have disclosed the material issues under the circumstances of the claim and later litigation."  (Doc 404, p.2)  In examining whether an insured breached the cooperation clause during a pre-suit investigation, it makes no sense to judge that cooperation in light of the circumstances of "later litigation."  No law supports that argument, and nothing like it appears in the elements as described by Georgia law.  *E.g.*, *Castellanos*.

Indeed, it makes no sense, as even if it were possible for anyone to consider the circumstances of "later litigation" during a pre-suit investigation, it would be the insurance company. Whether MJ breached the cooperation clause during the pre-suit investigation should not be judged based on the vagaries of the later litigation. This Court should focus on the pre-suit investigation as a specific set of time and grant MJ's motion.

> 3. It is undisputed Lyke thought off roading was relevant, so AmFam cannot show it reasonably asked MJ about off roading or that MJ "willfully and intentionally" failed to volunteer information about off roading.

It is undisputed AmFam's adjuster asked MJ no questions about off roading. Yet, AmFam argues MJ breached the cooperation clause pre-suit by not volunteering he had been off roading.[3] As explained above, no law holds that an insured breaches the cooperation clause by not anticipating what an insurance company needs to know to properly handle a liability claim. Thus, this Court may rule that MJ did not breach the cooperation clause if there is no evidence to support that AmFam (1) reasonably requested information about off roading or that (2) MJ "willfully and intentionally" failed to offer it. *Castellanos*, 297 Ga. at 177.

---

[3] Although not relevant to this motion, it is undisputed MJ freely stated he had been off roading in the Georgia mountains immediately upon being asked about it in the first days of the Underlying Lawsuit. (Doc 236-3, p.3)

In this case, if AmFam wanted information from MJ about off roading, it merely had to ask. Because it did not, there was no breach of the cooperation clause. AmFam argues it did not ask MJ about off roading because it had no reason to think he was off roading. AmFam supports this argument by (1) stating that when its adjusters designated MJ's Jeep a Specialized Off-Road Vehicle, the adjusters were referring to the Jeeps *purpose* rather than its *use* and (2) pointing to testimony from its adjuster, Lyke, suggesting that she thought MJ might have been hiking in the Georgia mountains prior to the wreck.[4] Both "facts" are false and unsupported by record evidence. The truth is in the undisputed fact that Lyke wrote the following in her claim diary regarding her question to the engineer:

> I asked if off roading with the jeep would that have effected it in any way and Mark said that off roading would not have caused the issue. Based on his findings insured would have lost steering at some point and off roading may have accelerated it but not caused it.

(Doc 395-3, p. 1, first entry)

The entry undisputedly refers to off roading with MJ's specific Jeep. The entry undisputedly asks whether off roading with MJ's Jeep could have caused the steering loss, which in turn caused the accident. The entry clearly discusses *use* of

---

[4] Also with respect to Lyke, AmFam argues that her testimony that MJ fully cooperated with her is not material because she was not aware of discovery in this litigation. AmFam's argument is not supported by facts. Lyke's sworn testimony is unrebutted by record evidence.

the Jeep as an off-roading vehicle and not its generic *purpose*. AmFam points to no record evidence to the contrary. No rational trier of fact could find that AmFam did not think off roading was relevant early in the claims handling process.

The entry is undisputedly contemporaneous. Lyke's testimony years later that she thinks of hiking when someone mentions the mountains does not create an issue of fact as to whether her contemporaneous claim note objectively states she thought *use* of the Jeep as an off-roading vehicle was relevant to the claim.

AmFam presents no evidence disputing the material fact that AmFam thought MJ might have been off roading. Yet, AmFam asked MJ nothing about off roading. AmFam cannot fulfill its burden to show it sought information about off roading or of a "willful and intentional" failure to answer questions about off roading as a matter of law.

### D. **AmFam never requested the Sears document, so there is no breach of the cooperation clause with respect to the Sears document as a matter of law.**

AmFam relies much on MJ's deposition and trial testimony, but it is undisputed that in none of that testimony was he asked to provide anything like the Sears document. MJ recognizes that this Court believes there are issues of fact with respect to his testimony, and he looks forward to explaining them at trial. In the meantime, this testimony is irrelevant to the instant motion.

AmFam argues that testimony concerning inspections MJ personally made of his Jeep go to inspections that may or may not have been made by Sears.  The cited testimony undisputedly asks MJ about any inspections he did personally and not inspections by third parties.

AmFam fails to show that it asked for the Sears document – or anything like it – or that MJ willfully concealed it.  This Court should grant MJ's motion.

### E. MJ's motion does not address prejudice.

AmFam correctly notes that MJ's motion does not address prejudice.  MJ is not required to show that AmFam was not prejudiced to prevail on this motion.  Indeed, MJ may prevail by demonstrating that there is insufficient evidence to support a single element of AmFam's claim.  *Divine Motel Grp. v. Rockhill Ins. Co.*, 655 F. App'x 779, 781 (11th Cir. 2016).  MJ's motion focuses on elements other than prejudice, which is entirely appropriate when moving on claims with multiple elements.  Even if (and it's a big if) AmFam suffered all the prejudice in the world, this Court may grant MJ's motion without addressing the element of prejudice.  MJ will certainly present argument and evidence at trial that AmFam was not prejudiced.  In the context of the instant motion, however, MJ respectfully suggests that prejudice is irrelevant to this Court's analysis and that this Court should make no ruling with regard to prejudice.

Respectfully submitted June 3, 2022.

>*/s/ Richard E. Dolder*
>James ("Jay") Sadd
>Georgia Bar No. 622010
>Richard E. Dolder, Jr.
>Georgia Bar No. 220237
>SLAPPEY & SADD
>352 Sandy Springs Circle
>Atlanta, Georgia 30328
>(404) 255-6677 (telephone)
>jay@lawyersatlanta.com
>rich@lawyersatlanta.com
>*Attorneys for Mr. Almassud*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Reply Brief in Support of Almassud's Motion for Partial Summary Judgment Regarding No Breach of the Cooperation Clause** was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record for all parties. I further certify that the foregoing was prepared in Times New Roman 14pt font and otherwise complies with Local Rule 5.1.

Respectfully submitted June 3, 2022.

>*/s/ Richard E. Dolder*
>Richard E. Dolder, Jr.
>Georgia Bar No. 220237
>SLAPPEY & SADD, LLC
>352 Sandy Springs Circle
>Atlanta, Georgia 30328
>(404) 255-6677 (voice)
>rich@lawyersatlanta.com
>*Attorney for Mr. Almassud*